16CR20032c-ord(feasability).wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 16-20032 |
| Plaintiff | : | |
| | : | |
| v. | : | SPECIAL MASTER DAVID R. COHEN |
| | : | |
| LORENZO BLACK, et al., | : | FEASABILITY REPORT AND |
| Defendants | : | STATEMENT OF WORK TO DATE |

**I.    Feasability Report.**

In its Order appointing the undersigned, under the rubric "Phase I," the Court directed me to "evaluat[e] the feasability of: (1) identifying privileged and confidential information contained within the recordings and other materials submitted by the Government and CCA to the Court; (2) excising and retaining this information; and (3) providing to the Government and Coordinating Discovery Counsel copies of the remaining, non-privileged and non-confidential materials. *Appointment Order* (docket no. 146) at 4. The Court also asked me to assess "the time, labor, and cost to index, cull, and segregate the privileged and confidential materials," including a "determination of: (1) the volume of the recordings (digital size and/or number of hours); (2) the number of audio and video recordings of the defendants and all other CCA detainees produced to the Government; (3) the number of audio and video recordings of attorney-client communications of defendants and all other CCA detainees produced to the Government; (4) whether it is possible to index the recordings and cull and segregate the confidential information; and (5) the technology,

equipment, software, and personnel required to undertake these tasks." *Id.* at 4-5 (footnote omitted). The Special Master now submits this responsive Report.

As authorized in the *Appointment Order*, *see id.* at 4 n.5, the Special Master hired American Discovery to: (i) help catalog the materials submitted by the Government and CCA to the Court, (ii) assess whether privileged and confidential information can be segregated, and (iii) estimate the cost of doing so. The Special Master directed American Discovery only to undertake an initial feasability assessment, and not to actually perform the work (which, if authorized by the Court, comes under the heading of "Phase II," *id.* at 5).

The Special Master has, so far, provided to American Discovery for initial assessment the following materials: (1) 75 audio CD/DVDs containing recordings of inmate telephone calls; and (2) six portable hard drives containing video-recordings from CCA cameras. The Special Master understands there may be additional relevant audio-recordings in the Court's vault, and/or not yet submitted by the Government.[1] Further, the Special Master understands the Government will deliver hard drives from seven computers used in the CCA prison library.

Initial assessment of the audio- and video-recordings confirms it is highly likely the Special Master ***can*** segregate the privileged and confidential information they contain, and provide to counsel the non-privileged and non-confidential materials. Specifically, the Special Master currently believes it will take about two weeks to produce the following to counsel: (1) all audio-recordings made from certain identified inmates to certain identified telephone numbers, which are

---

[1] With the help of the Government, the Special Master is still in the process of identifying some of the unlabeled materials in the Court's vault, so the amount of audio-recordings that must be assessed may increase. Further, small "gaps" in the inventory suggest there may be additional audio or video-recordings that were collected by the Government but not yet submitted (but the gaps may also be explained by simple numbering idiosyncracies).

known *not* to be recordings of telephone calls made to attorneys;[2] and (2) all video-recordings that do *not* show attorney-client conference rooms. In addition, the Special Master will be able to identify many (but not all) audio-recordings of telephone calls that *were* made to attorneys.[3] Finally, the Special Master believes it is feasible to identify all documents on the prison computers and to segregate those that contain confidential information; however, because the Special Master has not yet reviewed the computer hard drives, it is not currently possible to estimate how long that will take.

The Special Master estimates the expenses required to perform these tasks are as follows.

---

[2] The Government will identify the "critical" inmates and telephone numbers identified with the subset of recordings it wants to obtain.

[3] The Special Master has gathered telephone numbers of criminal defense attorneys in Kansas City, Kansas and Kansas City, Missouri, who: (a) work for the Federal Public Defender, or (b) are eligible for appointment pursuant to the Civil Justice Reform Act. This list will probably allow the Special Master to identify the majority of inmate calls made to attorneys, but certainly not all of them.

Thus, from the entire universe of audio calls, the Special Master currently intends to: (1) identify and produce to counsel a subset of "critical" calls *known not to be* between inmate and attorney, *see* footnote 2; and (2) identify and segregate a subset of calls *known to be* between inmate and attorney. The universe of recordings will still include calls that *may be* between inmate and attorney. At this juncture, the Special Master does not intend to produce or examine further those other calls. Thus, additional work will be necessary if requests are made for additional subsets of calls from this universe (e.g., if defense counsel asks for production of all non-privileged calls by a certain inmate, or the government asks for production of calls to other critical numbers). Because the spreadsheets and pivot tables being created are comprehensive, however, much of the foundational effort will already be done, so the incremental expense to produce additional subsets of calls should be reasonably low.

| Task | Discovery America Expense |
|---|---:|
| Back-up all audio files on 75 disks; extract info and populate spreadsheet and pivot tables with descriptive data, allowing relevant calls to be searched and identified | $6,000 |
| Produce disks with identified calls only (no attorney-client calls) to be supplied to counsel | $6,000 |
| Examine DVR drives to determine video metrics and time-frames represented and camera accuracy | $2,000 |
| Review individual video segment (approx. 500-550 segments on each DVR Drive) to determine and document activity present on a given camera, if necessary (see footnote 4) | $300/segment |
| Extract and review information from law library computers; produce non-privileged documents | $6,000 |

In addition, the Special Master will have to spend time overseeing and assisting with the design and implementation of the above-listed tasks; and assessing the circumstances surrounding the creation of the recordings and the gathering of the materials submitted.[4] The Special Master estimates this will take approximately 100 hours.

---

[4] For example, the Special Master: (1) is helping to design the format of the searchable spreadsheets that will identify for counsel all of the audio- and video-recordings (and related meta-data); (2) needs to pursue additional inquiry into how the video-recordings were made at CCA (which will hopefully lead to a less-expensive method for segregating confidential material) and how the audio-recordings were gathered (which will hopefully answer questions about possibly missing material); and (3) will help design the process to isolate confidential documents on the law library computers.

Depending on the results of the inquiry into the video-recording system at CCA, the $300-per-segment video review expense may be entirely unnecessary. In any event, it is certain there are alternative "summary" approaches available, so that neither the Special Master nor American Discovery will need to spend much time actually viewing video-recordings. The Government suggested that "[s]pot checking one-sixth of the six DVRs could cost the United States approximately $1,350,000.00," objection at 22 (docket no. 163), but the Special Master is not a masochist and pledges to spend less than $100,000 (hopefully *far* less – perhaps even $0) actually reviewing video.

In sum, it is feasible to conduct the work described in "Phase II" of the *Appointment Order*; and it should take less than a month to finish all of it, with the limitations described above. The Special Master anticipates conferring with the parties during this process to determine the quickest and easiest way to provide them with exactly and only what they need.

If the Court concludes "Phase II" should begin, the Special Master will start immediately.

**II.     Statement of Work to Date.**

As directed by the Court, the undersigned has recently submitted his first bill. *See Appointment Order* at 12 ("the Special Master shall file <u>under seal</u> an Itemized Statement of fees and expenses" and "shall file with the Itemized Statement a Summary Statement, which shall list only the total amount billed [and] <u>shall not be filed under seal</u>.") (emphasis in original).

The Special Master is sensitive, however, to the fact that the Government has filed a motion for reconsideration of the *Appointment Order* (docket no. 163), the essence of which is that: (1) the Government agreed only to the Special Master's review of certain audio- and video-recordings and computers, for the purpose of segregating attorney-client privileged communications (*see* motion at 6); and (2) the Government cannot be required to pay for anything more than that (*see* motion at 13). This motion remains under advisement.

The Special Master has no position on this motion but notes that, in order to preserve as much as possible the status quo on the issues raised by the Government in its motion for reconsideration, the undersigned has purposefully limited his activities to date. Thus, close to 100% of the time and expense reflected in the first bill is related to matters the Government initially agreed to – that is, assessing the feasability of cataloging and reviewing the audio- and video-recordings

and computers, for the purpose of segregating attorney-client privileged communications ("Phase I"). None of the time and expense reflected in the first bill relates to matters the Government lists as objectionable in its motion for reconsideration (*see* motion at 14), except that the Special Master has: (1) hired American Discovery (at lower hourly rates) to assist with cataloging of the recordings; and (2) directed the Government to preserve various sources of evidence.

    **RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**DATED**: November 14, 2016