# UNITED STATES DISTRICT COURT
## District of Kansas

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        v.                         **CASE NO. 16-20032-JAR**

**LORENZO BLACK, et al.,**

        **Defendants.**

---

**UNITED STATES' SUR-REPLY TO THE FEDERAL PUBLIC DEFENDER'S REPLY (Doc. 240) CONCERNING THE SPECIAL MASTER'S REPORT REGARDING OTHER ISSUES RELATED TO RECORDINGS AT CCA-LEAVENWORTH (Doc. 214)**

---

Comes now the United States of America, by and through Thomas E. Beall, United States Attorney for the District of Kansas, and Debra L. Barnett, Assistant United States Attorney, and respectfully offers the following in reply to the Federal Public Defender's Reply (Doc. 240) Concerning the Special Master's Report Regarding Other Issues Related to Recordings at CCA-Leavenworth (Doc. 214).

In her most recent filing (Doc. 240), the Federal Public Defender ("public defender") attempts to shift the focus of this litigation towards summary

conclusion and away from the measured and methodical approach taken by the Special Master. The government respectfully submits that the rush to judgment advocated by the public defender is not supported by the record and undercuts the extensive work already undertaken by the Special Master.

Specifically, the public defender advocates in her reply that the Court adopt all of the proposed findings from her Proposed Findings of Fact and Supplemental Request to Expand the Special Master's Investigation (Doc. 230) and indicates that some have not been opposed by the government. The government respectfully disagrees. The public defender proposed findings as an alternative to those made by the Special Master, and the government has consistently advocated that the Court adopt the findings and conclusions made by the Special Master in his report (Doc. 214) and discussed why the record does not lend itself only to the interpretation suggested by the public defender (Doc. 237).

However, for the sake of clarity, following is a summary of the government's positon with respect to each of the findings proposed by the public defender in Doc. 230.[1]

---

[1] Doc. 230 at p. 3.

*1. The USAO procured, by grand jury subpoena, more than 700 video recordings of privileged attorney-client communications.*

Response: The government has never disputed that the CCA surveillance recordings, which included attorney meeting room recordings, were obtained by a grand jury subpoena. However, the government, never having had knowledge of the specific contents of any of the attorney meeting room recordings, has never conceded that they reveal the content of any privileged communications. In any event, as tentatively concluded by the Special Master, no member of the United States Attorney's Office (USAO) has reviewed any of the attorney meeting room recordings.

*2. SAUSA Tomasic knew when she subpoenaed 22 months of "all video footage" at CCA-Leavenworth that this would include video recordings of attorney-client meetings; further, she did nothing to except those recordings from the grand jury subpoena or take any other protective measures that would have prevented the USAO from obtaining those privileged recordings.*

Response: First, as noted above, the government disputes that there has ever been adequate information developed and disclosed to determine that the video recordings at issue reveal the content of any privileged communications.

Second, SAUSA Erin Tomasic, along with AUSA Kim Flannigan, appeared before the Court at the hearing on September 7, 2016, as directed.[2] The Court, at the start of the hearing, set out the purpose for the hearing, stating in part: "[S]o I decided that I needed a number of questions answered, so that's why I called the hearing today."[3]  The Court then proceeded to ask questions of SAUSA Tomasic, and apparently did not see the need to ask questions of AUSA Flannigan, who was present and prepared to respond as ordered.  At no time during the Court's prefatory remarks and colloquy did the public defender object to the procedure employed by the Court to obtain information from SAUSA Tomasic.[4]

During the September 7, 2016 hearing, SAUSA Tomasic addressed her knowledge of recording practices at CCA, explaining that, prior to learning as a result of this litigation of the existence of the recordings at issue, her knowledge was based solely upon the statements made by an inmate cooperator during a debriefing interview in early March 2016.  She explained that the cooperator's belief that guards could monitor activity in the attorney meeting rooms, had been raised in the context of the cooperator's concerns about safety and amounted to three to five minutes out of an otherwise

---

[2] Doc. 123.
[3] Doc. 135, Transcript of 9/7/2016 hearing, at pp. 6-7.
[4] *See generally* Doc. 135, Transcript of 9/7/2016 hearing, at pp. 6-66.

extensive proffer.[5] She expressed regret at not being cognizant of the cooperator's thoughts from the proffer in early March when later drafting the subpoena for video surveillance from the CCA-Leavenworth facility in mid-April, and attributed the lack of recollection to the number of other complicated matters she had handled in the interim.[6]

SAUSA Tomasic candidly admitted that she simply did not recall to mind the information provided by the cooperator at the time she drafted the subpoena. Her forthright and direct willingness to speak plainly and responsively, and to candidly take personal responsibility for failing to recall, should provide the Court with the basis it needs to credit the further statement made by her as an officer of the Court, "[b]ut I want the Court to know that I did not intend to get that footage," and to dispel any concern that the government purposely sought the meeting room video in this matter.[7]

*3. The USAO, by SAUSA Erin Tomasic and Criminal Coordinator AUSA Kim Flannigan, relied on the existence of those privileged video recordings to attempt to disqualify a defense counsel from representing her client.*

Response: The government previously addressed in its Consolidated Response the differences between the recollection and interpretation of the

---

[5] *Id.* at p. 137.
[6] *Id.*
[7] Doc. 135, Transcript of 9/7/2016 hearing, at p. 137.

involved prosecutors and defense attorney Jacquelyn Rokusek as to the content and meaning of certain communications between them regarding a possible conflict in the representation of a defendant in *United States v. Rapp, et al.*[8] The public defender continues to discount any interpretation of these communications but her own, despite the contrary information provided to the Court. Certainly neither party has full knowledge of what is known to the Court on these matters: the government does not know what information was shared by Ms. Rokusek during her *ex parte* presentation to the Court on August 16, 2016, and neither party knows what information on this issue has been obtained by the Special Master during his investigation on the Court's behalf. However, the facts are disputed in the partial record that is known to the parties, and the Special Master has not reported findings or conclusions on this issue. As such, the Court should decline to make the public defender's proposed finding.

*4. CCA falsely denied that video of attorney-client meetings at CCA was recorded.*

Response: The government repeatedly relayed the sequence of events with respect to its efforts to respond quickly when the public defender communicated her initial concern. Beyond that, as CCA, now Core Civic, is a

---

[8] Doc. 237 at pp. 13-16.

separate entity, not a party to this action, and not represented by the government, the government takes no further position on the actions or intent of CCA.

The public defender, in her Reply to the United States' Consolidated Response (Doc. 240), however, asserts that SAUSA Tomasic and AUSA Flannigan knew that information provided by the CCA Warden was false and took no steps to correct it.  In essence, the public defender contends these prosecutors had information more insightful than the Warden at the correctional facility, who subsequently, though mistakenly, believed and reported that there were no video recordings in attorney-client rooms.  As represented by SAUSA Tomasic to the Court, SAUSA Tomasic was, in March 2016, aware only of an uncorroborated inmate cooperator's belief that guards could monitor activity in the CCA attorney meeting rooms, a belief of which she did not recollect for some time thereafter.[9]  Subsequently, the Warden represented to a Deputy United States Marshal, who then reported to the USAO, that CCA was not video-recording attorney-client meeting rooms.  The USAO in good faith relied upon and reported this information to the public defender.[10]  Until the issue was raised by the public defender in this case in

---

[9] Doc. 135, Transcript of 9/7/2016 hearing, at p. 137.
[10] At the time the Federal Public Defender made initial inquiry to Criminal Chief Deb Barnett regarding possible video-recording of attorney client meeting rooms at CCA, the Federal Public Defender did not at that time associate the inquiry or concern with any particular defendant or case,

early August 2016, AUSA Flannigan was completely unaware that CCA was video-recording attorney meeting rooms.

*5. The USAO obtained recorded attorney-client phone calls from CCA, at times without a subpoena or other written record, and with no judicial determination regarding the protected status of these communications. The USAO did not notify the affected attorneys or their clients that the USAO was in possession of these privileged calls.*

<u>Response</u>: The government has properly obtained telephone recordings of in-custody defendants either directly from the facility, or through law enforcement officers, by various legal means. Prior to this litigation, the USAO was unaware of any issue with the call privacy system at CCA and, during this investigation, the only known instance of a privileged call between an attorney and client was not listened to by the USAO and was promptly and properly disclosed to the attorney at issue.[11] Moreover, this is, again, an area where the record has not been fully developed and the Special Master has not proposed a specific finding. As such, the Court should decline to make the public defender's proposed finding.

---

i.e. the instant case.
[11] Doc. 135, Transcript of 9/7/2016 hearing, at pp. 25-26, 30-33, 50-53.

*6. The USAO discovery policy and practice allowed SAUSA Tomasic to procure and disseminate privileged attorney-client communications.*

Response: As previously discussed in response to proposed finding number 1 (page 2), and as reported by her to the Court, SAUSA Tomasic never sought or intended to receive any potentially privileged attorney-client information. Further, the USAO has never conceded that the communications reveal the content of any privileged communications. Certainly, however, the USAO continues, as it always has, to review and revise procedures to resolve issues and concerns. The government, however, disputes that the facts presented support the sweeping finding the public defender proposes.

*7. CCA and Securus still do not provide reliable means of privileged attorney-client telephonic communication.*

Response: As noted throughout this litigation, CCA and Securus are separate entities, neither of which are named parties to this case, and neither of which are represented by the government. Accordingly, the government takes no position on this issue.

Overall, the public defender received an appropriate and timely response to her concerns from the government and received from the Court the Special Master review that she requested. The report of the Special Master appropriately focuses on the mechanics and specifics. The public defender

now asks the Court to disregard the Special Master's work and, instead, rush to premature findings and unsupported conclusions and to shape the Special Master's future activities.[12] The Court has in place a process to conduct a dispassionate, thorough, and professional review, stripped of emotion and hyperbole. This process should not be abandoned in favor of the rush to judgment, nor should the agenda of the Special Master be other than that which, through measured, impartial review, he deems necessary.

WHEREFORE the government respectfully requests that the Court affirm the Special Master's Report Regarding Other Issues Related to Recordings at CCA-Leavenworth (Doc. 214).

THOMAS E. BEALL<br>
United States Attorney<br>
<br>
 /s/ Debra L. Barnett<br>
DEBRA L. BARNETT<br>
Assistant United States Attorney<br>
United States Attorney's Office<br>
301 N. Main, Suite 1200<br>
Wichita, Kansas 67202<br>
316-269-6481<br>
K.S.Ct.No. 12729<br>
debra.barnett@usdoj.gov

---

[12] Doc. 240 at p. 2; *see also generally* Doc. 202.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 11, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                      s/ Debra L. Barnett
                                      DEBRA L. BARNETT
                                      Assistant U.S. Attorney