16CR20032M-ord(PhaseIII-Status1).wpd

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO. 16-CR-20032** |
| Plaintiff | : | |
| | : | |
| v. | : | **SPECIAL MASTER DAVID R. COHEN** |
| | : | |
| **LORENZO BLACK,** *et al.*, | : | <u>**FIRST STATUS REPORT REGARDING**</u> |
| Defendants | : | <u>**PHASE III INVESTIGATION**</u> |
| | : | |

Beginning in December of 2016, the undersigned issued several *Reports* regarding: (1) CCA-Leavenworth's use of the hardware and software provided by Securus Technologies to record phone calls made by inmates to their attorneys; and (2) CCA-Leavenworth's use of a PELCO multi-camera system to record video of inmates' meetings with their attorneys. *See* docket entries 183, 187, 193, & 214 (first four *Reports* issued by the Special Master); *see also* docket no. 146 (*Order of Appointment*, setting out "Phase I and Phase II" of the Special Master's duties).

The detailed findings set out in these *Reports* were made possible because both CCA-Leavenworth and Securus were fully responsive to requests for information by the Special Master. For example, CCA-Leavenworth provided unfettered access to its jail facility and personnel, and produced emails responsive to search terms suggested by the Special Master. Similarly, Securus responded with particularity to the Special Master's inquiries by producing several custom-designed spreadsheets containing data regarding audio-recordings at CCA-Leavenworth, and also providing

access to its online database. *See Report Regarding Other Issues Related to Recordings at CCA-Leavenworth* at 1 (docket no, 214) (noting that CCA-Leavenworth and Securus were both "laudably cooperative" during the Special Master's investigation).

Following issuance of the Special Master's first four *Reports*, on May 17, 2017, the Court ordered the undersigned to pursue a "Phase III investigation." This follow-up investigation was directed toward assessing the possession and use of CCA audio- and video-recordings by the Office of the United States Attorney for the District of Kansas ("OUSA"), as well as the investigative agencies with which the OUSA works. *See "Phase III Order"* at 45-47 (docket no. 253).

Accordingly, the Special Master has requested certain information from: (1) the OUSA; (2) the Kansas Bureau of Investigation ("KBI"); (3) the United States Marshals Service ("USMS"); and (4) the United States Secret Service ("USSS"). (The Special Master refers below to these four entities collectively as "Agencies.") Specifically, the Special Master made two types of requests. First, the Special Master provided the Agencies with certain search terms, and asked the Agencies to produce responsive emails and other documents. Second, the Special Master sent to each Agency a letter, asking it to respond to about a dozen specific, written Requests for Information.

The timing and details of these requests, and the responses so far received, are set forth below.

Beginning in November of 2016, the Special Master worked cooperatively with the OUSA to craft language directing OUSA staff to: (1) preserve and collect information relevant to the *Black* investigation, and (2) let the other Agencies know they also had an obligation to preserve and collect the same information. On December 17, 2016, the language for this "Litigation Hold" was finalized and the OUSA issued it shortly thereafter. *See* Exhibit A (email thread between AUSA Emily

Metzger and the Special Master finalizing agreement on the language of the Litigation Hold).

At the same time, the Special Master also worked cooperatively with the OUSA to craft search terms to be applied to the OUSA's electronic repository of emails and other documents. In an effort to ensure the search terms were neither over- nor under-inclusive, the Special Master worked with the OUSA's technology staff to test and "tweak" various iterations, a process that went on for several months. *See* Exhibits B & C (exemplar emails between OUSA and the Special Master, dated January 26, 2017 and May 18, 2017, reflecting ongoing testing and modification of search terms). During this time, the OUSA did not actually produce any documents; this was frustrating to the undersigned, but the Special Master remained patient. Finally, on June 5, 2017, the Special Master directed the OUSA to run the latest iteration of search terms against the document repository of a single custodian, SAUSA Erin Tomasic, and to produce responsive documents. *See* Exhibit D (email directing OUSA to make some final changes to the search terms and to "Please run this search on Tomasic's repository and produce the results to me . . . as soon as possible.").[1]

In response to this June 7th directive, however, the OUSA contacted the undersigned and explained it had new concerns regarding production of Tomasic's documents for various reasons,

---

[1] On February 28, 2017, the OUSA identified for the Special Master about 30 "employees who responded that they were likely to have or might have information responsive to the Litigation Hold." In an effort to minimize the size of the collection of OUSA documents gathered by the search terms, the Special Master and the OUSA began to discuss not only modifying the search terms, themselves, but also running the search terms against fewer than all of these 30 employees. The Special Master and the OUSA eventually agreed that, as a starting point, the search terms would be run only against SAUSA Tomasic's document repository; upon reviewing the results, the Special Master could then work with the OUSA to further limit the search terms, if necessary. Among other reasons, Tomasic was chosen as the first employee for document production because her employment with the OUSA had ended in mid-May of 2017, so her document repository was static.

primarily including unresolved internal personnel matters between the OUSA and Tomasic. The OUSA explained that, because of this internal dispute, the OUSA might have a conflict – and therefore might have to assign to some other entity all responsibility for document production, including review of the Tomasic documents for relevance, national security concerns, privacy issues, and so on. On June 30, 2017, the OUSA explained:

> The over-arching issue we face is getting a determination on whether or not we have a conflict in our representation. We have pushed hard to get to a resolution on this issue. We are anticipating, but cannot guarantee an answer next week. If it is determined that we have a conflict, the matter will go before the Deputy A.G. to determine whether to waive the conflict, or appoint conflict counsel.

Email from United States Attorney Tom Beall to the Special Master. Ultimately, on July 14, 2017, the Department of Justice sent a letter to the Court and the Special Master stating it had "appointed Assistant United States Attorney (AUSA) Steven D. Clymer, Northern District of New York (NDNY), as a Special Attorney to assist the United States Attorney's Office for the District of Kansas (USAO) in the Special Master's [Phase III] Investigation." *See* Exhibit E.

Up until June of 2017, the Special Master had refrained from seeking information directly from KBI, USMS, and USSS, for two reasons. First, the Special Master expects that most of the information necessary to answer the questions posed by the Court in the *Phase III Order* is in the possession of the OUSA, and not the other Agencies. Second, given the importance of their work, the Special Master hopes to impose as little as possible on *all* of the Agencies (including the OUSA), while still undertaking a thorough investigation; accordingly, the Special Master intended to seek information from KBI, USMS, and USSS only after reviewing information from the OUSA, so that follow-up requests to the other Agencies (if even necessary) could be more limited.

In light of the delays in production of any information by the OUSA, however, the Special

Master changed this approach. Specifically, on June 11, 2017, the Special Master sent to KBI, USMS, and USSS a letter asking them to run a document search using the same search terms as had been negotiated with the OUSA. *See* Exhibit F. Also, the Special Master wrote a letter to all four Agencies (including the OUSA), asking each Agency to respond to a dozen or so "Requests for Information ('RFIs')." *See, e.g,* Exhibit G.[2] The Special Master purposefully asked the Agencies ***not*** to "wait to respond until you have gathered ***all*** of the information requested; rather, please submit the requested information as you gather it, with an explanation of which RFIs you are responding to." This instruction was meant to ensure the flow of information began quickly, unlike the delays that had so far occurred with the OUSA. Also, the Special Master designed the RFIs with the expectation that the OUSA could answer at least *some* of them, despite the OUSA's concern about a possible conflict of interest regarding Tomasic's documents, or other issues like national security.

Thereafter, the Special Master checked in with each Agency periodically to determine whether it was making progress in collecting the requested information. As summarized below, the Agencies' responses since June of 2017 have been mixed.

---

[2] Exhibit G is the letter sent to the OUSA; the specific Requests for Information sent to each of the four Agencies were slightly different.

**KBI** has so far responded quickly and thoroughly.[3] KBI assigned two attorneys to serve as points of contact for the undersigned. These attorneys designed an internal survey to gather information from KBI agents, and have provided much of that information to the Special Master; this production is ongoing. The KBI attorneys also worked with the Special Master to tweak the search terms in order to make their document production more accurate and speedy; counsel is now in the process of reviewing for relevance and privilege the documents it gathered. As of this writing, KBI expects to begin producing responsive documents next week, and expects to produce all responsive documents within several weeks.

**USMS** has also responded quickly and thoroughly. USMS designated a senior agent to serve as a point of contact for the undersigned in connection with the written RFIs. USMS also designated an attorney and an information technology administrator ("IT-Admin") as points of contact in connection with production of documents responsive to the search terms. The senior agent has gathered information from other USMS agents, and has produced written responses to the RFIs; the Special Master recently requested some follow-up information. The senior agent has also produced some relevant hard-copy documents, which the Special Master requested separately (e.g., Audio Request Forms submitted by USMS to CCA-Leavenworth). The IT-Admin expects to produce all documents responsive to the search terms within a week.

---

[3] The Special Master is aware that at least some of the Kansas bar is frustrated, and believes the Phase III investigation is taking too long, and would question whether anything has been "quick." The Special Master empathizes with this sentiment. That said, the amount of information requested of the Agencies is voluminous; and KBI, USMS, and USSS have each offered believable and legitimate explanations that it takes substantial time to collect the requested information, review it for relevance and privilege, and produce it in a usable format. Moreover, each of these Agencies has had to divert resources from other, important law enforcement efforts to attend to the RFIs. The Special Master wishes the Agencies could respond more quickly, but it is fair to say that KBI has been assiduous.

**USSS** assigned an agent-attorney to serve as a point of contact for the undersigned in connection with both the written RFIs and the production of documents responsive to search terms. Until late September of 2017, USSS consistently assured the undersigned (who called periodically for status updates) that it: (1) was collecting information responsive to the RFIs; and (2) had collected documents responsive to the search terms, and was reviewing them for relevance and privilege, with the expectation of forthcoming production. *See* Exhibit H. Recently, however, an event occurred that caused USSS to inform the Special Master that it might not produce anything at all.

Specifically, on September 12, 2017, the Special Master received a 24-page letter from AUSA Clymer, wherein he "respectfully decline[s] to provide most of the information and documents sought in the RFI[s] [from OUSA]." *See* Exhibit I.[4] The Special Master was surprised by this position, as the OUSA had previously objected to production of documents based only on a possible conflict of interest relating to Tomasic (which was to be *resolved*, not heightened, by obtaining "outside counsel"), or on issues of national security or employee privacy. The OUSA never suggested it did not intend to produce any responsive documents even after determining whether it needed to obtain conflict counsel.

The Special Master's initial response to Mr. Clymer's letter was simply to turn to more productive veins – that is, to focus instead on obtaining information from KBI, USMS, and USSS

---

[4] Given that the Special Master sent the RFIs to the OUSA in a non-public letter, Mr. Clymer was appropriately concerned and sent his responding letter to the undersigned privately, rather than copying the parties or filing the letter on the docket. Mr. Clymer graciously noted, however, that "the government does not oppose you providing a copy of this letter to the defendants and their attorneys, along with the 'interested parties' and the 'intervenor.'" *Id.* at 1. In light of the number of such recipients and the nature of the Phase III investigation, the Special Master concludes it is appropriate simply to attach Mr. Clymer's letter to this *Report*.

– with the intention of returning to the OUSA later. In other words, having learned the OUSA was not going to be cooperative, the undersigned has continued to pursue the Phase III investigation by working with the other Agencies.

About two weeks ago, however, USSS has pointed to Mr. Clymer's letter and stated it is now re-thinking whether it will produce any responsive information. Thus, at this juncture, neither OUSA nor USSS is cooperating with the Special Master's investigation.[5]

Unfortunately, then, the Department of Justice was incorrect when it stated in July of 2017 that it was "confident that [appointment of outside conflict counsel] will be of great assistance to the OUSA and the Court in bringing the Investigation to completion." Exhibit E at 1. From the Special Master's perspective, that the OUSA *may* have valid bases upon which to refuse production of information does not mean it is wise to do so. As the Special Master noted earlier, "there is a widespread undergrowth of mistrust between the Office of the United States Attorney for the District of Kansas and defense counsel," *Report* at 25-26 (docket no. 214). The Court ordered the Phase III investigation in order to cure (or at least improve) this situation. *See Buckley v. Valeo*, 424 U.S. 1, 67 ("Sunlight is said to be the best of disinfectants.") (quoting Justice Brandeis, *Other People's Money* 62 (1933)). The OUSA's recent choice not to produce information responsive to the Special Master's requests is a drawing of shades against sunlight; this will not ameliorate any mistrust from the defense bar. And the OUSA's choice may be against its own interests – as Mr. Clymer acknowledged, the Special Master's *initial* investigation suggested that "[defense bar] suspicions of regular incursion into attorney-client communications . . . are groundless." *Report* at 26 (docket

---

[5] Just as the Special Master sat down to file this Report, USSS indicated it ***does*** intend to respond to the written RFIs next week, but will not produce any documents responsive to search terms.

no. 214); *see* Exhibit I at 1 ("The Department of Justice . . . is heartened by the results of your investigation to date . . . ."). Indeed, the Phase III investigation to date suggests there is only *one* instance where the OUSA even made a *request* for video-recordings of meetings at CCA between inmates and their attorneys, and the OUSA did not actually view any such meeting.

Obtaining a neutral declaration of good behavior, and acknowledging bad behavior (if any) and taking action to fix it, is the surest way to OUSA reconciliation. The Special Master believes that the Agencies' allowing the undersigned to pursue fully the Phase III investigation is the best, and perhaps only, way to repair "the underlying mistrust between the prosecution and defense bars in Kansas City," which "manifests itself in the squandering of scarce judicial resources, increased expense and frustration of all parties, and ultimately a diminished quality of justice for the entire community." Report at 27-28 (docket no. 214). Eradicating these harms are surely goals the OUSA shares, but its latest position does not bring the goals any closer.

That said, as matters now stand, the Special Master is compelled to note that the Court earlier addressed the possibility of non-cooperation by the OUSA. On March 20, 2017, the OUSA wrote a letter to the Court complaining that having to pay for Phases I and II of the Special Master's investigation was affecting adversely its "annual litigation budget;" thus, the OUSA "request[ed] relief from paying additional fees and expenses associated with any further review and investigation herein." The Court acceded to this request, stating the OUSA would not bear the cost of the Phase III investigation. *Phase III Order* at 48 (docket no. 253). But the Court added this caveat:

> Although the Court relieves the government from bearing the cost of the Special Master's investigation going forward, there is one exception. If the government does not cooperate regarding the inspection and copying described in Section VIII. (9) above, or otherwise litigates the production of materials and information necessary for the Special Master to pursue his investigation, then the

fees, costs, and expenses associated with that noncooperation will be paid by the government.

*Id.* at 48 n.60.

The Special Master regretfully reports that the OUSA has chosen to bring this caveat into play. In any event, the Special Master will continue to pursue the Phase III investigation by using other sources of information, including those discussed above.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**DATED**: October 20, 2017