IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LORENZO BLACK,
KARL CARTER,
DAVID BISHOP,
ANTHON AIONO,
ALICIA TACKETT, and
CATHERINE ROWLETTE,

    Defendants.

Case No. 16-CR-20032-JAR

## MEMORANDUM AND ORDER

This matter comes before the Court on the Government's Motion to Terminate Phase III of the Special Master's Investigation (Doc. 336), Corrected Motion to Quash Subpoenas Issued by the Federal Public Defender (Doc. 340), Corrected Motion to Quash the Special Master's Subpoena *Duces Tecum* and Subpoenas *Ad Testificandum* to United States Attorney ("USAO") Employees and Motion to Vacate Special Master's Order of Production (Doc. 341), Motion to Quash Additional Subpoena Issued by the Federal Public Defender (Doc. 360), and Motion to Quash Additional Subpoenas Issued by the Federal Public Defender and Subpoenas Issued by Defendants Carter and Bishop (Doc. 370).[1]  Aside from the Government's motion to quash additional subpoena issued by the federal public defender, these matters are fully briefed and the Court is prepared to rule.  For the reasons explained in detail below, the Court denies in part the Government's motions to quash and denies the Government's motion to terminate Phase III.

---

[1] A number of other motions remain pending in this case, including the Federal Public Defender's Motion for Order to Show Cause (Doc. 301) and Defendant Karl Carter's Motion to Dismiss Indictment (Doc. 333).  These motions are not yet ripe for ruling, and the Court intends to hear argument on them at the January 18, 2018 hearing.

**I.      Background**

On May 4, 2016, the grand jury returned an Indictment charging six Defendants with drug crimes arising out of the alleged introduction and sale of controlled substances inside the Detention Center in Leavenworth, Kansas operated by Corrections Corporation of America, now known as CoreCivic (referred to as "CCA" in this Order). The investigation of the conspiracy included executing a search warrant inside CCA in March 2016, during which agents seized materials from detainees' cells as well as computers and other materials from CCA personnel. During an early discovery hearing on July 21, 2016, the Government stated it anticipated the grand jury would indict as many as 95 more individuals, including CCA detainees, associates of those detainees who were outside the facility, and also personnel at the facility, as part of the drug conspiracy. Addressing the topic of video recordings that agents had seized from CCA, the Government also stated at this hearing that CCA had cameras in attorney-client meeting rooms, but that these rooms were only video-monitored for security purposes, and not recorded.

On August 5, 2016, the Federal Public Defender ("FPD") filed a motion for Fed. R. Crim. P. 41(g) Return of Information based on information and belief that the Government was, in fact, in possession of video recordings of the attorney-client meeting rooms at CCA, and these recordings intruded into privileged, confidential communications of attorneys and clients housed at CCA.[2] The FPD filed an amended motion on August 7, 2016, in which it alleged that in addition to the video recordings, "[w]e understand that all legal calls are also recorded, and the

---

[2]Doc. 82.

2

content of those calls are provided to the USAO."[3] Defendants Catherine Rowlette, Lorenzo Black, David Bishop, and Karl Carter joined in the motions, as did Interested Parties Richard Dertinger and David Lougee (who were alleged co-conspirators indicted in separate criminal cases).

The Government's initial production of discovery in this case included recordings of attorney-client phone calls. Moreover, the Government produced these recordings not just to the attorney who was on the call, but to other defense counsel as well. As discussed further below, the Court appointed a Special Master to investigate, among other things, the scope of audio and video recording of attorney-client communications at CCA. Having learned through the hearings in this case of audio- and video-recording of attorney-client communications at CCA, Defendants in other cases across this District filed Rule 41 motions based on the dissemination in this case of their private communications with attorneys.

Ultimately, defendants in at least 30 cases filed Rule 41 motions in this and other cases. Some Judges denied the motions before them without prejudice to refiling following the Special Master's investigation, while others held the motions in abeyance pending the conclusion of the investigation. Other motions were terminated following sentencing proceedings in the respective cases. Other Defendants across the District have also filed motions for post-conviction relief, based on the issues central to the Special Master's appointment. At this writing, seven motions for relief pursuant to Rule 41 remain pending. One of the defendants who filed a Rule 41 motion in another case, Michelle Reulet, moved to join the defense motions filed in this case, alleging that prosecutors in her case had listened to phone calls between her and her attorney that were recorded at CCA. The Court initially orally granted Ms. Reulet's motion, but granted the

---

[3]Doc. 85.

Government's motion for reconsideration after reviewing the pleadings in her case, conferring with the judge assigned to her case, and finding that the issues raised in her motion were distinct from those raised in this case.

On August 9, 2016, the Court conducted an emergency hearing on the FPD's Rule 41 motions and the motions to join or intervene. The FPD, all Defendants except for David Bishop and Alicia Tackett, and the Government appeared at this hearing. The FPD presented the testimony of several witnesses, and the Government cross-examined several of these witnesses. Jackie Rokusek, counsel for a defendant in another case in this District, *United States v. Dertinger*, made a statement asserting that Special Assistant United States Attorney ("SAUSA") Erin Tomasic and Assistant United States Attorney ("AUSA") Kim Flannigan had confronted her and attempted to make her withdraw from that case by using the video recordings obtained in this case to suggest a conflict of interest.[4] Based on the evidence presented at the August 9 hearing, the FPD and the Government agreed that the Court should appoint a Special Master, though the FPD and Government disagreed about the scope of the Special Master's investigation. The Government wanted the Special Master's work to be limited to acting as a taint team or privilege master, culling the video recordings of attorney-client conferences from the video recordings of all other recorded activity throughout the CCA facility.

On August 16, 2016, the Court held a second evidentiary hearing on these matters. The Government, Defendants, the FPD, and Interested Party David Lougee each appeared and presented argument as to the appointment of a Special Master. At the hearing, the Court acknowledged arguments regarding standing with respect to the FPD that the Government made

---

[4]SAUSA Tomasic made statements to the Court on September 7, 2016 challenging Ms. Rokusek's account, and AUSA Kim Flannigan gave testimony during a hearing conducted on June 20 and 21, 2017 in *United States v. Dertinger* challenging Ms. Rokusek's account.

in a previous response to pending motions.[5] The Court explained that irrespective of the standing of the FPD, the issues raised in the Rule 41 motions were properly before the Court because all Defendants had moved to join in the motion.[6] Michael Jackson, counsel for Defendant Catherine Rowlette, presented evidence of recorded phone calls between numerous other CCA detainees and their attorneys, which the Government obtained and disseminated to him and other defense counsel in this case.[7] During these initial hearings, the Government did not provide an explanation of how it obtained the recordings, how it used the recordings, or why the recordings were disseminated to persons other than the client and attorney who were recorded.

The Court held a third hearing on these issues on September 7, 2016. The Government, all Defendants except for Lorenzo Black, and the FPD appeared at this hearing, during which the Court heard argument from the parties concerning the appointment of a Special Master and directed questions to SAUSA Tomasic. Although SAUSA Tomasic provided information, many of the Court's questions regarding the Government's conduct in obtaining and disseminating the recordings, including the Government's intent in doing so, went unanswered.

Based on the hearings and the parties' submissions, the Court entered an order on October 11, 2016 appointing David R. Cohen as Special Master in this case.[8] The Court ordered Mr. Cohen to conduct two phases of an investigation ("Phases I and II"). Phase I would involve determining the feasibility of culling potentially privileged and confidential attorney-client recordings from the universe of audio and video recordings the Government obtained from CCA

---

[5] Aug. 16, 2016 Hrg. Tr., Doc. 118, at 7–8.
[6] *Id.* at 60–61.
[7] *Id.* at 18–23.
[8] Doc. 146.

in this case. Phase II would involve culling the potentially privileged materials, and providing progress updates to the Court and the parties. The Court explained that following the completion of Phases I and II, the Court would consider expanding the scope of the Special Master's appointment to a third phase ("Phase III"), focused on determining whether the Government intentionally sought and used the potentially privileged recordings, which was the issue at the heart of the pending Rule 41 motions.

On October 27, 2016, the Government moved to reconsider the Special Master's appointment.[9] The Court denied the Government's motion for reconsideration, finding that the Special Master's duties were properly assigned and that the costs for the initial Phases I and II of the investigation were properly imposed on the Government. On October 28, 2016, the Court held a discovery conference, during which the Special Master, the government, the Defendants, the FPD, and Interested Parties Michelle Reulet, David Lougee, and CCA all appeared.

The Special Master proceeded to conduct Phases I and II of the investigation and filed several detailed status reports with the Court during the course of the investigation.[10] Phases I and II revealed that CCA routinely recorded all telephone calls of detainees. Although CCA had signage and aural warnings on the calls advising detainees of this practice, as well as language in the detainee handbook, CCA's website and other materials recognized the confidential nature of attorney-client communications. Phases I and II also revealed that CCA had a form that an attorney could complete to block the recording of their clients' calls to the attorney's phone numbers. These forms were provided to detainees, who were obligated to provide the forms to their attorneys to complete the blocking process. Phases I and II revealed that hundreds of

---

[9]Doc. 163.

[10]Docs. 176, 177, 182, 183, 186, 187, 193, 214.

attorney-client calls were recorded at CCA and obtained by the Government, including calls of detainees whose attorneys had completed the blocking process.

On May 17, 2017, the Court ordered the Special Master to commence with Phase III of the investigation, which would focus on, *inter alia*, determining "how and when the USAO and investigative agencies (and which individual prosecutors, USAO staff and/or investigative agents) came into possession of audio and video recordings of attorney-client communications of defendants in this case, inmate targets and subjects of the CCA investigation, and defendants with pending motions for relief in the District of Kansas based on allegations of such."[11] The Court explained that Phase III would also focus on whether the USAO or investigative agencies intentionally or unintentionally obtained or used the attorney-client recordings. This issue is germane to the Defendants' motions, which argue that the Government has violated their Sixth Amendment right to counsel. While the Government bore the cost of the Special Master's fees and expenses for Phases I and II, the Government has not borne the cost of the Special Master's fees and expenses for Phase III. The Court has entirely borne the cost of Phase III, from specially appropriated funds.

On June 19, 2017, the Government filed a Notice of Record Clarification and Correction,[12] meant "to clarify and correct any and all prior representations that may be deemed misleading or potentially misleading."[13] The Government explained that based on information it had received from SAUSA Tomasic, it believed she had listened to attorney-client calls not only in connection with this case, but also in connection with *United States v. Herrera-Zamora*,[14] a

---

[11]Doc. 253 at 45.

[12]Doc. 276.

[13]*Id.* at 2.

[14]14-20049-01-CM.

7

case before another Judge in this Court.  Ultimately, the Defendant in *Herrera-Zamora* filed a motion to Vacate Judgment and for New Trial based on the information provided in the Government's similar notice of correction of record in that case.[15]  The Government did not oppose this motion, and the Court has indicated that it will grant the motion following remand of the Defendant's appeal.[16]

The defendant in *United States v. Dertinger* filed several motions, including a motion to dismiss indictment, based on the allegations of the Government's use in his case of the attorney-client recordings obtained in this case.  *United States v. Dertinger* was transferred to this Court in May 2017 based on the interrelatedness of the issues in that case and this case.[17]  The Court held an evidentiary hearing in *United States v. Dertinger* on June 20 and 21, 2017.  The Court continued the hearing on Defendant's motion to dismiss and several other motions until September 14, 2017.  Before the hearing, however, the parties entered into a plea agreement in which they agreed to a sentence of time served.[18]

For several months following the Court's Order directing the Special Master to proceed to Phase III of his appointment, the Government worked collaboratively with the Special Master to compile documents relevant to the Phase III investigation. The Government also asked the Special Master to serve as a "taint team" to review materials seized in the March 2016 search of CCA to segregate out attorney-client letters and communications. On September 12, 2017, the Special Master received a letter from Special Attorney for the United States Steven Clymer, wherein he "respectfully decline[d] to provide most of the information and documents sought"

---

[15]*United States v. Herrera-Zamora*, 14-20049-01-CM, Doc. 181.

[16]*United States v. Herrera-Zamora*, 14-20049-01-CM, Doc. 200.

[17]14-20067-JAR-6, Doc. 520.

[18]Defendant Dertinger was charged with four counts of drug and money laundering charges.  Based on the drug quantity charged in Count I, Defendant was subject to a five-year mandatory minimum prison sentence.  *United States v. Dertinger*, 14-20067-JAR-6, Doc. 237.

by the Special Master as a part of the Phase III investigation.[19] The Special Master filed a Phase III report on October 20, 2017, in which he described Special Attorney Clymer's refusal to provide information sought in the course of the Phase III investigation. The Court set a hearing for November 28, 2017 to discuss "the Special Master's findings concerning the Government's failure to comply with the Phase III investigation" and "any other issues the parties may want to address related to the Phase III investigation."[20] On November 3, Special Attorney Clymer entered his formal appearance on behalf of the United States. The hearing was continued until January 18, 2018, at Special Attorney Clymer's request.

On December 4, 2017, the Special Master issued an Order of Production directing Special Attorney Clymer to bring to the January 18 hearing certain documents and materials. The Special Master issued a subpoena *duces tecum* directed at the same documents, and issued subpoenas *ad testificandum* directed at seven present and former employees of the United States USAO. Each subpoena *ad testificandum* was accompanied by a summary of testimony sought from the subpoenaed witnesses, as required by 28 C.F.R. § 16.23(c). In December 2017, the FPD also issued several subpoenas *ad testificandum* directed at eleven current employees and one former employee of the USAO, also accompanied by summaries of testimony sought, as well as subpoenas *ad testificandum* directed at two former employees of CCA. The FPD also issued a subpoena *duces tecum* to CCA for records of legal visits by FPD employees and consultants.

On December 18, 2017, Defendant Karl Carter moved to dismiss the Indictment based on prosecutorial misconduct.

---

[19]Doc. 298, Exh. I at 2.
[20]Doc. 300.

The Government moved to quash the Special Master's order for production and subpoenas, and also moved to quash the FPD's subpoenas. The Government also moved to terminate Phase III of the investigation. On December 21, 2017, the Court stayed compliance with the following: the Court's Order granting the FPD's motion for Production,[21] the Special Master's order for production, and the Special Master's subpoena *duces tecum*. The Court did not stay compliance with any of the subpoenas *ad testificandum*, instead setting a briefing schedule for the Government's motions to quash. The Court also set briefing deadlines for Defendant Carter's motions to dismiss and to join the motions filed by the FPD and the Government's motion to terminate Phase III of the investigation.

## II.  Discussion

The Government moves to terminate Phase III of the investigation and quash the challenged subpoenas and the Special Master's production order before the scheduled January 18, 2018 hearing. As an initial matter, the Court must determine the issues that are properly before the Court at this time. As explained above, the Court previously stayed compliance with the FPD's subpoena *duces tecum*, the Special Master's order for production, and the Special Master's subpoena *duces tecum*.[22] The Court will not be lifting this stay before or during the January 18 hearing. Thus, the Government's motions to quash with respect to these issues are not properly before the Court at this time. The Court therefore proceeds to consider the Government's motion to terminate Phase III and the Government's motions to quash as they relate to the Special Master's, FPD's, and Defendants' subpoenas *ad testificandum*.

The Government argues that its motions present "two threshold questions": (1) whether the Special Master's Phase III investigation exceeds a federal district court's Article III

---

[21]Doc. 329.
[22]Doc. 345.

authority; and (2) whether the FPD has Article III standing in this case. The Government argues these two issues "are dispositive of all pending matters in this case other than the motions filed by defendants Karl Carter and David Bishop."²³ Therefore, the Government argues that the Court must resolve these questions before the January 18, 2018 hearing "because both the Special Master and FPD have issued impermissible subpoenas [*ad testificandum*] to numerous members of the USAO management team and staff, and the resulting obligation to appear on February [sic] 18, 2018, would be unduly burdensome and inappropriate in light of the respect due to a coordinate branch of government."²⁴

Before addressing the Government's arguments as to the scope of Phase III and the FPD's lack of standing, the Court notes that the January 18, 2018 hearing is necessary to address several pretrial motions before the Court. This hearing will address the FPD's motion for order to show cause, as well as "any other issues the parties may want to address related to the Phase III investigation."²⁵ These related issues include a volume of Rule 41 motions filed in this case and related cases, and also a motion to dismiss premised on allegations of prosecutorial misconduct. The January 18, 2018 hearing will inform whether the Phase III investigation is both proper and necessary to the resolution of the underlying pretrial motions and issues in this case. Thus, although the Court will address the "threshold issues" the Government has identified before the Janaury 18 hearing, the Court finds that the hearing is necessary to resolve the underlying pretrial motions at issue in this case.

**A.    Standing**

---

²³Doc. 361 at 6.

²⁴*Id.* at 5.

²⁵Doc. 300.

The Government argues that the FPD lacks standing. To establish standing, a party must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision.[26] To establish injury in fact, a party must show that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[27]

At the outset of this case, the Government explained that 95 detainees, CCA personnel and other associates were potentially involved and could be charged in the underlying conspiracy.[28] After learning that FPD attorney visits and conversations had been recorded at CCA and obtained and disseminated by the Government in this case, the FPD filed its motions for return of information pursuant to Fed. R. Crim. P. 41(g). The Court allowed the FPD to intervene because it was clear that the Government had procured recordings of dozens of detainees at CCA, including FPD clients. Since August 2016, information has come to light confirming what the FPD initially suspected in its Rule 41 motion—that is, that the Government obtained recordings of FPD attorneys communicating with their clients at CCA, and disseminated those recordings to parties in this case.[29] Also since August 2016, evidence has come to light in collateral litigation that the Government obtained from CCA and possibly used attorney-client communications, including in *United States v. Dertinger* and in *United States v. Herrera-Zamora*.

---

[26]*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

[27]*Id.* (quoting *Lujan*, 504 U.S. at 560).

[28]July 25, 2016 Hrg. Tr., Doc. 75 at 23.

[29]Doc. 183 at 3–5 (Special Master's Report providing table listing attorney-client recordings obtained in this case, including calls made to "Kansas Federal Public Defender Office").

Based on the above undisputed facts, the Court finds that the FPD has standing to litigate its Rule 41 motion and the issues central to the Phase III investigation in this case. The injury to the FPD in having its communications with clients at CCA recorded and disseminated in this case is concrete and particularized. Indeed, the original impetus for the Rule 41 motions was allegations of the Government using recorded conversations obtained in this case to interfere in another case.[30] Thus, the FPD's injury, and its concern that recordings of its attorney-client communications obtained in this case could be used outside this case, was "not conjectural or hypothetical."[31] Furthermore, the injury is fairly traceable to the particular conduct at issue in this case of the Government obtaining and disseminating confidential attorney-client communications. Finally, as the Court has explained in previous orders, the injury to the FPD and other parties is potentially remediable by curative measures the Court may implement following the conclusion of Phase III of the Special Master's investigation.[32]

Moreover, even if the Court erred in granting the FPD's motion to intervene and in finding that the FPD has standing to litigate these issues, there are Defendants who clearly do have standing. Throughout this litigation, Defendants Carter, Bishop, and other Defendants have appeared alongside the FPD and have joined in the FPD's arguments and motions. All Defendants joined in the FPD's Rule 41 motion that spurred the Court's appointment of the Special Master and the three Phases of his authorized investigation. Furthermore, Defendant Carter has a pending motion to dismiss based on the issues central to the Phase III investigation, and Defendants Carter and Bishop have issued subpoenas *ad testificandum* nearly identical to

---

[30]*See* Doc.85; Aug. 9, 2017 Hrg. Tr.,Doc. 104.

[31]*See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

[32]*See* Doc. 253 at 47 (directing the Special Master to recommend available remedies, if appropriate); Doc. 146 at 8 (same).

those issued by the FPD.[33]  Accordingly, the Court finds that the Government's concerns regarding standing do not justify quashing the subpoenas *ad testificandum* or further delaying the evidentiary hearing intended to explore significant issues related to Defendants' pending motions.

### B. Scope of Phase III

The Government argues that the Phase III investigation constitutes "a judicial investigation into the operations and decision-making of a co-equal branch of government," in violation of the separation of powers doctrine.[34]  But rather than a wide-ranging "judicial investigation into the operations and decision-making of" the USAO, Phase III is a limited investigation grounded in the Rule 41 motions at issue in this case and other, related cases.  In its original Rule 41 motion, joined by Defendants, the FPD argued that the conduct of the USAO in obtaining and disseminating recorded attorney-client communications violated its clients' Sixth Amendment attorney-client privilege.  As the Government has repeatedly argued, to rise to the level of a Sixth Amendment violation, government interference in attorney-client communications must be purposeful.[35]  Importantly, there already exists some evidence that the Government did, in fact, purposefully obtain and use attorney-client communications related to criminal defendants in this and other cases.  Thus, the Phase III investigation, limited to the questions of whether the Government intentionally viewed or listened to attorney-client

---

[33]*See* Doc. 366; Doc. 370.

[34]Doc. 361 at 3.

[35]Doc.336 at 17 (citing *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977)); Doc.237 at 10; Doc.133 at 27–28.

communications, is both proper and necessary to the resolution of the underlying Rule 41 motions in this case.[36]

The Government attempts to analogize this case to *In re United States*,[37] in which the Seventh Circuit found that a district court judge's demand for information about a defendant's eligibility for favorable treatment under U.S.S.G. § 5K1.1 was an impermissible "means to supervise the internal operations of another branch of the national government."[38] The judge's inquiries sought the names of case agents and witnesses, asked the prosecutor to disclose the status of ongoing investigations, and asked the prosecutor for evaluations of whether the defendant had provided "enough assistance."[39] Here, Phase III is not a "means to supervise the internal operations" of the USAO or an attempt to obtain evaluations of evidence in ongoing investigations, but rather is to determine whether the USAO or investigative agencies intentionally or unintentionally viewed or listened to attorney-client communications, as alleged in the Rule 41 motions at issue in this and related cases.

Certainly, the Court accepts and respects that the Government is entitled to assert legitimate concerns regarding its privileges and the potential overreach of questions that may be presented to witnesses at the January 18, 2018 hearing. To the extent the Government is concerned that certain inquiries will intrude into the "operations and decision-making" of the USAO, the Court is confident that the Government will assert any statutory and legal protections it has against providing testimony, as well as its regulatory privileges found at 28 C.F.R. §§ 16.21–26. Indeed, the Court will provide the Government a full opportunity to raise any relevant

---

[36] While not the impetus for the Special Master's initial appointment or Phase III, Defendant Carter's Motion to Dismiss relates directly to issues central to the Phase III investigation.

[37] 503 F.3d 638 (7th Cir. 2007).

[38] *Id.* at 641.

[39] *Id.*

protections or privileges, and the Court will consider the same. But the Court cannot find that the Government's concerns justify a wholesale termination of Phase III of the Special Master's appointment. Accordingly, the Court denies the Government's motion to terminate Phase III of the Special Master's investigation.

### C.    Subpoenas *Ad Testificandum*

Relying on Fed. R. Crim. P 17(c)(2) and various *Touhy*[40] privileges, the Government moves to quash the subpoenas *ad testificandum* issued by the Special Master, the FPD, and Defendants Carter and Bishop. Rule 17(c)(2) provides a mechanism for quashing "unreasonable or oppressive" subpoenas directed at the production of documents and objects. Rule 17(c)(2), however, does not control subpoenas *ad testificandum*, and there is no applicable privilege that exempts federal employees from *appearing* before a court pursuant to a subpoena. As the Government argues, there are substantive statutory and legal protections, as well as regulatory privileges, that shield testimony of federal employees under certain circumstances. *Touhy* prevents courts from holding in contempt those Department of Justice employees and former employees who refuse to answer questions for lack of authority to answer from Department officials.[41] But these privileges do not exempt an employee from appearing pursuant to a properly issued subpoena and either testifying or raising an appropriate privilege. As explained above, the Government will have a full opportunity to assert any applicable privileges at the January 18 hearing. While some of the testimony sought at the hearing may indeed be privileged, the Government has failed to show that the subpoenas must be quashed because *all* of the sought testimony comes within the scope of *Touhy* privileges.

---

[40]*Touhy v. Ragen*, 340 U.S. 462 (1951).

[41]*See* 28 C.F.R. §§ 16.21–26; *Touhy*, 340 U.S. 462.

16

Additionally, the Government argues that the Court must quash the subpoenas "to prevent witnesses from being compelled improperly to gather documents, travel to Kansas City, Kansas, and appear for the hearing."[42] The Court is not convinced that compliance with the subpoenas *ad testificandum* would impose an undue burden on the Government or its employees. The Government witnesses are either attorneys who entered appearances in this case, employees who participated in Phases I, II, and III of the investigation, or individuals who otherwise are material witnesses in the Phase III investigation and the underlying litigation. Those witnesses still employed by the USAO or the federal government are all located in this District or a bordering District. Those witnesses who are not federal government employees may have privileges that can be asserted by the Government, but the Government is not entitled to raise the argument of "undue burden" on their behalf. For these reasons, the Court denies the Government's motions to quash as they relate to subpoenas *ad testificandum*.

**IT IS THEREFORE ORDERED BY THE COURT** that the Government's Motion to Terminate Phase III of the Special Master's Investigation (Doc. 336) is **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that the Government's Corrected Motion to Quash Subpoenas Issued by the Federal Public Defender (Doc. 340) is **denied as it relates to subpoenas *ad testificandum*.** The Government's original Motion to Quash Subpoena issued by the Federal Public Defender (Doc. 334) is **denied as moot**.

**IT IS FURTHER ORDERED BY THE COURT** that the Government's Corrected Motion to Quash the Special Master's Subpoena *Duces Tecum* and Subpoenas *Ad Testificandum* to USAO Employees and Motion to Vacate Special Master's Order of Production (Doc. 341) **is denied as it relates to subpoenas *ad testificandum***. The Government's original Motion to

---

[42]Doc. 361 at 14–15.

Quash the Special Master's Subpoena *Duces Tecum* and Subpoenas *Ad Testificandum* to USAO Employees and Motion to Vacate Special Master's Order of Production (Doc. 335) is **denied as moot**.

**IT IS FURTHER ORDERED BY THE COURT** that the Government's Motion to Quash Additional Subpoena Issued by the Federal Public Defender (Doc. 360) is **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that the Government's Motion to Quash Additional Subpoenas Issued by the Federal Public Defender and Subpoenas Issued by Defendants Carter and Bishop (Doc. 370) is **denied**.

**IT IS SO ORDERED.**

Dated: January 12, 2018

                                                          S/ Julie A. Robinson
                                                          JULIE A. ROBINSON
                                                          CHIEF UNITED STATES DISTRICT JUDGE