**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Case No. 16-CR-20032-JAR** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Government's Motion to Quash the** |
| | ) | **Special Master's Subpoena** *Duces* |
| **LORENZO BLACK,** | ) | ***Tecum* dated April 23, 2018;** |
| **KARL CARTER,** | ) | **Memorandum of Points and** |
| **ANTHON AIONO,** | ) | **Authorities; Exhibits** |
| **ALICIA TACKETT,** | ) | |
| **CATHERINE ROWLETTE, and** | ) | |
| **DAVID BISHOP,** | ) | |
| | ) | |
| **Defendants.** | ) | |

The United States of America, by and through its counsel of record, Assistant United States Attorney Steven Clymer, appointed as Special Attorney pursuant to 28 U.S.C. § 515 to represent the United States in connection with Phase III of the Special Master Investigation, hereby moves this Court to quash the special master's subpoena *duces tecum* dated April 23, 2018, directed to First Assistant United States Attorney Thomas Beall demanding production of specified documents and materials on May 15, 2018.

The government notes that, among other things, on December 21, 2017, this Court stayed compliance with an earlier special-master-issued subpoena *duces tecum* demanding essentially the same documents, materials, and information described in the present subpoena *duces tecum*. [Docket #345]. That stay, which remains in effect, should apply to the present subpoena *duces*

*tecum*. Further, for the reasons described in the government's motion to quash the earlier subpoena *duces tecum*, this subpoena *duces tecum* also should be quashed. In addition, there is insufficient time for the government to assess the demands in this subpoena under the applicable federal regulations and to comply with this subpoena if compliance is authorized in whole or in part under those regulations.

This motion is based on Rule 17(c)(2) of the Federal Rules of Criminal Procedure, the files and records of this case, and the attached memorandum of points and authorities, and exhibits.

.

Respectfully submitted,

Steven D. Clymer
Assistant United States Attorney
Special Attorney for the United States

## MEMORANDUM OF POINTS AND AUTHORITIES

### I

### Introduction

The United States of America hereby moves this Court to quash a subpoena *duces tecum* issued by the special master on April 23, 2018.  This remedy is required because the subpoena is inconsistent with this Court's earlier order staying compliance with an essentially identical subpoena *duces tecum*.  Further, compliance with the subpoena would be unreasonable and oppressive.  The subpoena demands production of documents that are not relevant to the case or controversy before this Court; are privileged and inadmissible; and are not specific.  The subpoena is being used as a discovery or investigatory device, not to secure identified relevant and admissible evidence or testimony as Rule 17 requires.   Further the subpoena is unduly burdensome given the nature and extent of the information sought and the short time provided for compliance.

### II

### Background

On or about December 4, 2017, the court-appointed special master in this case issued a subpoena *duces tecum* directed to government counsel demanding production on or before January 18, 2018, of 14 categories of documents and material.  [Exhibit A].  On that same day, the special master filed an "Order of Production" that made the same demands as the subpoena *duces tecu*, but required compliance sooner, by January 2, 2018. [Docket #317].  The government moved to quash the subpoena *duces tecum* and to vacate the order of production.  [Docket #335, #341].  On December 21, 2017, this Court issued an order staying compliance with both the special master's

subpoena *duces tecum* and the production order. [Docket #345]. This Court order remains in place.[1]

On or about April 23, 2018, without having moved the Court to reconsider its order, the court-appointed special master issued a second subpoena *duces tecum*, directed to First Assistant United States Attorney ["FAUSA"] Thomas Beall, demanding production on May 15, 2018, of 13 categories of documents and materials. [Exhibit B]. This second subpoena—the subject of this motion to quash—demands essentially the same documents and materials described in the first subpoena *duces tecum*, which remains subject to this Court's stay order.[2]

### III

### Governing Law

**A. Law of the Case**

The Court of Appeals for the Tenth Circuit recently described the "law of the case" doctrine as follows: "Under the 'law of the case' doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Trent*, 884 F.3d 985, 994 (10th Cir. 2018) (quoting *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983))). Law of the case is a "rule of practice" that "directs a court's discretion," not "an inexorable command" limiting its power. *Id.* at n.9. An appellate court will deviate from law of the case only "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the

---

[1] The Federal Public Defender ["FPD"] has moved to lift the Court's stay as to the special master's production order. [Docket #451]. Along with this motion to quash, the government is filing a response to the FPD motion to lift the stay.

[2] Some of the demanded material already has been produced. A November 5, 2016 letter from Assistant United States Attorney Dustin Slinkard to the special master is responsive to Item #13.

decision was clearly erroneous and would work a manifest injustice." *Cressman v. Thompson*, 798 F.3d 938, 946 (10th Cir. 2015) (quoting *United States v. Irving*, 665 F.3d 1184, 1192 n. 12 (10th Cir.2011) (quoting *United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir.1998))).

Typically, if a litigant wishes to have a district court reconsider an interlocutory order, it files a motion for reconsideration. In such a circumstance, "a district court can use whatever standard it wants to review a motion to reconsider an interlocutory order. It can review the earlier ruling *de novo* and essentially reanalyze the earlier motion from scratch, it can review the ruling *de novo* but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether." *Pueblo of Pojoaque v. New Mexico*, 214 F. Supp. 3d 1028, 1091 (D. New Mexico 2016). No motion to reconsider was filed here.

### B. Rule 17

Rule 17 of the Federal Rules of Criminal Procedure governs the issuance of subpoenas *duces tecum* in advance of trials and hearings. "Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). As a result, a broadly drafted production demand "not intended to produce evidentiary materials" but instead "merely a fishing expedition to see what may turn up" is "invalid." *Id.* at 221. Consistently, Rule 17(c)(2) provides in part that "the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive."

Decisions following *Bowman* applied the following test to determine whether to enforce or quash a pretrial subpoena in a criminal case:

> [I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in

advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699–700 (1974) (footnote omitted).

The Tenth Circuit has distilled the *Nixon* test into an approach requiring the party defending a subpoena to "clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (internal quotation marks, brackets, and citation omitted); *see also United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006) (describing three requirements).

"The requirement of relevance serves to ensure that a subpoena is not used to circumvent Rule 16 [governing pretrial discovery in federal criminal cases]. *United States v. Castro-Motta*, No. 11-CR-00033-REB, 2012 WL 3400828, at *2 (D. Colo. Aug. 15, 2012). Thus, "vague, global requests . . . are patently inadequate to satisfy" the burden of justifying a subpoena. *Id*. "Conclusory statements do not establish relevance." *Abdush-Shakur*, 465 F.3d at 468.

Further, "only materials that are 'admissible as evidence' are subject to subpoena under the rule." *United States v. Cuthbertson*, 651 F.2d 189, 192 (3d Cir. 1981) (quoting *Bowman Dairy*, 341 U.S. at 221).

A subpoena also must be quashed when it is insufficiently specific. *Morris*, 287 F.3d at 991. In *Morris*, the Tenth Circuit held that the district court properly quashed a subpoena broadly seeking information about a government investigation when the demanding party did not specify the precise items sought and was "unable to verify whether the requested material even exists." *Id*. As Magistrate Judge O'Hara in this District has explained:

> To meet the specificity requirement, a subpoena must refer to specific documents or, at least, to specific kinds of documents. It is not enough that the documents have some potential of relevance and evidentiary use. There must be a sufficient likelihood that the requested material is relevant to the offenses charged in the

> indictment, and a sufficient preliminary showing that ... [the requested material] contains evidence admissible with respect to the offense charged.

*United States v. Reed*, 2008 WL 4724437 (D. Kansas 2008) at *1.

Courts have also quashed subpoenas on other grounds. *United States v. Lansing*, No. 2:08-CR-558 TS, 2009 WL 321575, at *1 (D. Utah Feb. 9, 2009) (rejecting the argument "that the court may quash the subpoenas only if there is a showing that "compliance would be unreasonable or oppressive"). For example, Rule 17(h) provides in part that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule." Rather, such statements are governed by the restrictions in Fed. R. Crim. P. 26.2, which is similar to the so-called "*Jencks Act*," 18 U.S.C. § 3500. Similarly, a subpoena can be quashed on "other possible grounds . . . that are not listed in rule 17(c)(2), such as assertion of a privilege. *Lansing*, 2009 WL 321575, at *1.

## IV

## Argument

The legal principles described above require that special master's second subpoena *duces tecum* be quashed for a host of reasons.

### A. The Special Master Should Not Be Permitted to Circumvent a Court Order by Simply Issuing a Second Subpoena.

If the special master believes that either the law or circumstances have changed since this Court issued its order staying compliance with the special master's initial subpoena *duces tecum* and production order, and that those changes merit this Court's reconsideration of its earlier order, the special master should move for reconsideration and explain why it is appropriate. Simply reissuing a subpoena *duces tecum* that demands the same materials as the initial subpoena *duces*

*tecum* that the Court previously stayed is not an appropriate means of challenging the Court's interlocutory order.

### B. The Demanded Documents Are Not Relevant to the Case and Controversy Before the Court.

The demanded documents, materials, and testimony have no relevance to the case and controversy before the Court in *United States v. Black*. The documents and materials demanded by the subpoena *duces tecum* and production order pertain, *inter alia*, to the reaction inside the United States Attorney's Office for the District of Kansas ["USAO"] to the district court's orders to retain, preserve, and produce materials related to the investigation and prosecution of this case; the identity of certain digital USAO repositories; internal DOJ and USAO guidelines; the government's use of taint teams; internal USAO professional responsibility and ethics matters and other internal USAO communications; the government's pre-litigation positions; internal USAO investigative conduct; and the handling of computer equipment inside the USAO. [Exhibit B].

In contrast, the case before this Court involves contraband smuggling at CCA-Leavenworth. None of the demanded documents or testimony has any apparent bearing on the guilt of the defendants remaining in the case or on the unopposed Rule 41 motions. Nor does the subpoena identify any documents specific to any still-pending pretrial claim or to any sentencing claim.[3]

---

[3] The subpoena appears designed to further the special master's investigation. Rule 17 does not permit use of subpoenas in support of a pre-hearing investigation; the rule is a means of securing known *evidence* for presentation at a trial or hearing. There is no alternative statutory basis for the exercise of subpoena power in criminal case other than through the federal grand jury during its investigation.

### C. Much of the Demanded Documentation is Privileged and Inadmissible.

Further, much of the demanded documentation is inadmissible and outside the scope of Rule 17 by virtue of the work-product doctrine, and/or one of more of the following privileges – the attorney-client privilege; the law enforcement privilege; and the deliberative process privilege. The subpoena *duces tecum* and production order expressly demand production of internal USAO documents created in connection with the investigation and litigation of this case and other cases (*see, e.g.* Exhibit B; demands #1, #2, #5, #6, #7, #8, #9, #11, #12); legal guidance provided in internal Department of Justice ["DOJ"] communications (*see, e.g.*, Exhibit B, demand #4); and internal pre-decisional deliberations (*see, e.g.*, Exhibit B, demand #7). All of this documentation and testimony is privileged and thus inadmissible. *See, e.g. SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) (explaining that when a federal prosecutor "prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, [she] has litigation sufficiently 'in mind' for that document to qualify as attorney work-product"); *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169-70 (2011) (recognizing that the government can invoke the attorney-client privilege); *United States v. Zingsheim*, 384 F.3d 867, 871 (7th Cir. 2004) ("The attorney-client privilege covers conversations between the prosecutors (as attorneys) and client agencies within the government."); *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (explaining that the law enforcement privilege "is based primarily on the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files . . . and bars disclosure of facts.") (citation and internal quotation marks omitted) (first ellipses in original); *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (explaining that the deliberative process privilege "allows the government to withhold documents and other materials that would reveal advisory opinions, recommendations and deliberations

comprising part of a process by which governmental decisions and policies are formulated") (citations and internal quotation marks omitted).

Some privileges must, of course, "yield to the demonstrated, specific need for evidence in a pending criminal trial." *Nixon*, 418 U.S. at 713.  The government recognizes its obligation to disclose certain privileged information in compliance with its duties under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), the *Jencks Act*, 18 U.S.C. § 3500, and the Federal Rules of Criminal Procedure.  But the applicable privileges do not yield here for at least two reasons.  First, the special master, as an arm of the Court, is not seeking the privileged information as a representative of any of the defendants in this case.  There is no suggestion that the special master needs access to the information in order for the Court to adjudicate the claims of the parties in this case.  Second, the categories of information sought here would not ordinarily be subject to disclosure in any criminal case.  Even if the defendants in this case had requested the subpoenas, the defendants could not "demonstrate[ ]" a "specific need" for information regarding internal USAO communications, decision-making, and operations.  *Nixon*, 418 U.S. at 713.

### D. The Special Master's Subpoena *Duces Tecum* is Not Specific.

The special master is conducting an investigation, not seeking specific admissible evidence for use in in a hearing related to this case as Rule 17 requires.  This is borne out by the demands in subpoena *duces tecum*, which describe only broad, unfocused categories of information, and do not identify specific evidentiary items.

### E. The Special Master's Subpoena *Duces Tecum* Violates Rule 17(h).

Many of the demands in the special master's subpoena *duces tecum* are directed toward documents consisting of internal USAO communications.  *See, e.g.*, Exhibit B at requests #1, #2, #6, #7, #8, #12, #13.  Any written statements that fall within the broad categories described by the

subpoenas are governed by Rule 26.2, and thus fall outside the scope of a Rule 17 subpoena. Fed. R. Crim. P. 17(h).

F. **The Special Master's Subpoena is Unduly Burdensome and Compliance Likely is Not Possible by the Demand Date.**

The document demands made in the April 23, 2018 subpoena are extraordinarily broad. Among other things, compliance would require searches of USAO electronic databases and paper files for documents related to this and other cases and not limited to any particular USAO employee. For example, Item #11 demands in part production of "all documents and materials related to requests or demands for audio or video recordings of detainees at CCA," from January 2014 through May 2017, without further limitation. Similarly, Items #9 and #10 demand the creation and/or production of records related to numerous persons, some of whom are not UYSAO employees, regarding events taking place over the same lengthy time period that bear no relation to the case before the court. As a result, it would be burdensome and likely not possible to compile and review the documents demanded by the subpoena by the demanded production date.

Further, because the subpoena demands "the production or disclosure of . . . material contained in the files of the Department, . . . information relating to material contained in the files of the Department, [and] information acquired by any person while such person was an employee of the Department as a part of the performance of that person's official duties or because of that person's official status the requested documents and materials," 28 C.F.R. § 16.21(a), the subpoena recipient requires Department of Justice authorization before any, some, or all of the demanded

disclosure can be made. *See* 28 C.F.R. §§ 16.27 and 16.28. It likely is not be possible to complete the necessary review process required by the applicable regulations before the demand date.

## V

## Conclusion

For the reasons set out above, the government respectfully requests that this Court quash the special master's subpoena *duces tecum*, or stay compliance as the Court did with respect to the previous special master subpoena *duces tecum* and production order.

**Certificate of Service**

I hereby certify that on the 7th day of May, 2018, the foregoing was electronically filed with the clerk of the court for the District of Kansas using the CM/ECF system, which will send a notice of electronic filing to all counsel.

*S/Deanna Lieberman*
Deanna Lieberman
Paralegal Specialist
United States Attorney's Office
Northern District of New York