Exhibit A1

<u>Thomas Beall, First Assistant U.S. Attorney, Interim U.S. Attorney,
    Acting U. S. Attorney, D. Kan. USAO</u>

SUMMARY STATEMENT PER 16.23(c)

Beall will be asked to testify as to the reasons for allowing a relatively new SAUSA, Erin Tomasic, to take charge of a complex criminal investigation or case.  He will be asked to explain her in-house training, if any, to handle information in the Grand Jury and pretrial discovery phases of any criminal investigation and prosecution arising in the USAO.

Beall will be asked about when he first knew of grand jury subpoenas that were issued or returned for the *Black* case demanding information from CCA regarding its audio and/or video monitoring and/or recording practices at CCA.  He will be asked about any discussions with Tomasic, her supervisor AUSA Kim Flannigan, or their supervisor, AUSA Debra Barnett, concerning such subpoenas.

Beall will be asked to explain why he did not direct that a formal litigation hold be placed concerning the *Black* case immediately after the Court's orders arising from the August 9, 2016, hearing.  He will also be asked to explain why the search terms negotiated with the Special Master were not implemented.

Beall will be asked, if anything, he did to address the unpermitted, after-hours intrusion into the chambers of the *Black* trial judge, and what he has since done to better educate his staff and the U.S. Marshal's staff concerning any inappropriate activity connected with their positions.

Beall will be asked what he has done during his tenures as First Assistant U.S. Attorney, Interim U.S. Attorney, and Acting U.S. Attorney to help the Court understand what the Special Master found to be widespread mistrust, tension and other problems between the USAO in Kansas City and the criminal defense bar at the Kansas City, Kansas, branch office, as opposed to the other two branch offices.

Exhibit A2

Emily Metzger, AUSA, D. Kan. USAO

SUMMARY STATEMENT PER 16.23(c)

On December 15, 2016, Metzger, in her capacity as "District Litigation Hold Coordinator, emailed to the Special Master a draft of a "litigation hold email" to be directed to all personnel in the U.S. Attorney's Office for the District of Kansas ("USAO") and relevant federal agents.  That document has already been docketed as an attachment to the Special Master's Report (Doc. 298), and is incorporated into this summary by reference.

Metzger will be asked to testify as to any electronic, written, or oral instructions she received regarding preservation and production of written and electronic information in the *Black* case.

In her litigation hold email, Metzger told USAO personnel that she would "in the very near future" provide them with the "particular search terms to be used in searching information systems." Metzger will be asked to explain why the final set of search terms negotiated with the Special Master was not implemented.

Metzger will be asked to explain why a "litigation hold" direction was not issued between the Court's order resulting from the August 9 hearing in *Black* and December 17, 2016.  She will also be asked to testify as to her interactions with USAO personnel regarding implementation of "litigation hold" requirements in the *Black* case.

Metzger will be asked about any oral discussions she had with USAO personnel as to what should be done regarding timely and adequate cooperation with the Special Master.  She also will be asked what she knows about the circumstances surrounding the USAO's failure to preserve a computer containing information received in the Black case and wiping its hard drive clean.

Exhibit A3

<u>Debra Barnett, AUSA; Chief, Criminal Division, First Assistant U.S. Attorney, D. Kan. USAO</u>

SUMMARY STATEMENT PER 16.23(c)

Barnett will be asked about any oral or written communications she had with Kim Flannigan or Erin Tomasic, or both, regarding the Grand Jury subpoenas issued by Tomasic in the *Black* investigation, either before they were issued or at any later occasion.

Barnett will be asked about her involvement in and her knowledge of Flannigan's involvement in the decision for Tomasic to enter the chambers of the trial judge in *Black*, after hours and without permission from any Court employee who had authority to give permission.

Barnett will be asked to explain her actions or inactions concerning the discovery that Tomasic had obtained and reviewed privileged communications from CCA.  She can say whether she also obtained and reviewed privileged communications, whether she made attempts to find out if any other inappropriate or illegal actions had been taken in the *Black* case, and steps she has taken to cooperate with the Special Master and demand cooperation of others.

Exhibit A4

<u>Kim Flannigan, AUSA</u>

SUMMARY STATEMENT PER 16.23(c)

Flannigan will be asked what instructions or information she gave Erin Tomasic regarding conduct of the *Black* investigation and prosecution, and what instructions or information she received from her own supervisor, Debra Barnett, regarding that investigation and prosecution.

Flannigan will be asked about any communication she had with Tomasic regarding the Grand Jury suboenas issued by Tomasic in the *Black* investigation; the meeting she and Tomasic had with Jacquelyn Rokusek; and any communication she had with the Acting U.S. Attorney about these matters.

Flannigan will be asked to explain why she permitted Tomasic to enter chambers of the *Black* trial judge after hours and without Court permission or authority.

Flannigan will be asked about her actions or inactions concerning her knowledge that Tomasic had obtained and reviewed arguably privileged communications from CCA. She will also be asked about her own review of those communications.

Exhibit A5

<u>Pauletta Boyd, Support Staff Member, D. Kan. USAO</u>

SUMMARY STATEMENT PER 16.23(c)

Boyd will be asked about the categoric content of, and storage provisions for, audio and video recordings produced by CCA.  She will be asked to describe the system she used to ensure an acceptable chain of custody for materials in each box of recordings, including any log of individuals permitted to view video recordings connected with the *Black* case. She will be asked about her knowledge of those who viewed the contents of boxes marked with notice that they might contain attorney-client material, and under what circumstances.  She will be asked what she knows about any log of those who listened to audio records provided by CCA.  She will be asked what she knows about the circumstances under which the computer she used to view CCA's video recordings was the only one that was not preserved and had its hard drive wiped clean.

Exhibit A6

<u>David Steeby, Support Staff Member, D. Kan. USAO</u>

SUMMARY STATEMENT PER 16.23(c)

Steeby will be asked about the circumstances surrounding negotiations with the Special Master to devise a set of search terms for electronic records maintained by the USAO, and his knowledge of reasons why the final search terms were never implemented.   He will also be asked about the USAO's failure to preserve and decision to wipe clean the hard drive of the computer designated for viewing the video recordings produced by CCA.

Exhibit A7

<u>Erin Tomasic, SAUSA, D. Kan. USAO</u>

SUMMARY STATEMENT PER 16.23(c)

Tomasic will be asked about the purpose, planning, and conduct of a meeting she and her supervisor, Kim Flannigan, had with Jacquelyn Rokusek, and any interaction with AUSA Debra Barnett concerning that meeting.

She will be asked about the circumstances of her unpermitted, after-hours entrance into the chambers of the trial judge.

Tomasic will be asked about her own involvement in reading or viewing anything she received through Grand Jury subpoenas she issued in the *Black* case and through any other source. She will be asked why she decided to issue the Grand Jury subpoenas, including any discussions she had with Flannigan or Barnett about issuing the subpoenas, before or after she issued them. She will be asked about discussions she had with any AUSA or the U.S. Attorney concerning dealing with grand jury returns in the *Black* case. She will be asked about her personal knowledge of any other person who received or reviewed arguably privileged communications between inmates and their attorneys, whether in the *Black* case or any other case.

Tomasic will be asked about her training and instructions from her USAO supervisors, regarding the usual patterns and practices of the USAO when an attorney or agent either deliberately or inadvertently comes into contact with materials that might have privileged content. She also will be asked about her training and instructions from her USAO supervisors regarding the usual patterns and practices of the USAO in dealing with the Court and defense counsel regarding investigation or prosecution of criminal matters.

Exhibit B1

# Kansas Federal Public Defender

www.ks.fd.org

Federal Public Defender Melody Brannon
First Assistant Federal Public Defender Kirk Redmond



Topeka Division Attorneys
Branden A. Bell
Rich Federico
Carl Folsom
David Magariel
Andrew McGowan
Paige A. Nichols

April 30, 2018

*Delivered via email*
Mr. Steven Clymer
Assistant U.S. Attorney
Northern District of New York
steven.d.clymer@usdoj.gov

Re:    *Touhy* request for *United States v. Lorenzo Black, et. al.*,
16-cr-20032-JAR (D. Kan.)

Dear Mr. Clymer:

On December 14 and 19, 2017, and March 15, 2018, we wrote a *Touhy* request to your office requesting certain testimony and documents. This letter serves as a renewed *Touhy* request, pursuant to 28 C.F.R. §§ 16.21(a) and (b), requesting persons listed herein, employed by the United States Attorney's Office for the District of Kansas (USAO), to appear and testify at the evidentiary hearing on May 15, 2018, or as required thereafter until completion of their testimony.

As you know, the Court set the hearing to discuss the Special Master's findings concerning the government's failure to comply with the Phase III investigation and other matters raised concerning the Phase III investigation. The Phase III investigation was ordered specifically to investigate the conduct of the USAO and its agents. It is in this context that the witnesses are requested to appear and testify.

Each person listed herein is an "employee" of the Department of Justice, and the USAO in particular, as defined under 28 C.F.R. § 16.21(b) and USAM § 1-611. A summary of the testimony sought from each witness is also provided, as required under 28 C.F.R. § 16.23(c), generally in summaries of witness testimony filed as Exhibits 5A-5G to your Motion to Terminate "Phase III" of the Special Master's investigation, D.E. 336, as well as the following:

Kansas City Division
500 State Ave, Room 201
Kansas City, Kansas 66101
Tel 913.551.6712
Fax 913.551.6562

Topeka Division
117 SW 6th Ave, Ste 200
Topeka, Kansas 66603
Tel 785.232.9828
Fax 785.232.9886

Wichita Division
301 N Main, Ste 850
Wichita, Kansas 67202
Tel 316.269.6445
Fax 316.269.6175

1. **Tom Beall** – Topeka, Kansas

Mr. Beall is currently the First Assistant United States Attorney for the District of Kansas. During much of this litigation, Mr. Beall served as Acting United States Attorney for the District of Kansas. He has personal knowledge and can testify about the following topics:

(1) His office policy, procedures, and practice concerning the issuance of subpoenas to obtain, or that would include, attorney-client communications, to include production of any written policy;

(2) His office policy, procedures, and practice on requesting, obtaining, and reviewing any material that contains attorney-client communications, to include production of any written policy;

(3) Whether he knows of any attorney, agent, or employee of the USAO accessed, or had access to, defense protected attorney-client communications;

(4) When and how he became aware that at least one of his prosecutors, former SAUSA Erin Tomasic, listened to and/or watched recordings of protected attorney-client communications;

(5) What remedial action, if any, he took or had taken to ensure defense attorney-client communications were not further being obtained and reviewed by his office;

(6) What remedial action, if any, he took or had taken regarding misconduct by SAUSA Tomasic or any other USAO prosecutor or employee;

(7) His decision not to "correct the record" regarding SAUSA Tomasic entering into Chief Judge Robinson's chambers after-hours, as detailed during a hearing on September 7, 2016;

(8) The total number and names of cases in which the USAO notified opposing counsel, the court, and/or filed a notice of record correction to correct prior statements and representations of USAO prosecutors relating to the USAO obtaining, possession, using, disseminating, listening, or viewing protected attorney-client communications;

(9) The nature of the "conflict" in the USAO's representation of the government in this case, as evidenced by communications with the Special Master;

(10) Any and all communications with Main Justice concerning the Phase III investigation, the USAO's conflict in continuing to represent the government in this investigation, and guidance received from Main Justice concerning the conflict; and

(11) The government's decision to limit or cease cooperation with the Special Master's Phase III investigation.

(12) Whether he has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

## 2. Emily Metzger – Wichita, Kansas

During much of the litigation, Ms. Metzger was the First Assistant for the USAO. She has personal knowledge and can testify about the following topics:

(1) Her role and duties as the District Litigation Hold Coordinator for the USAO;

(2) The USAO policy and practice concerning the issuance of a litigation hold in this case;

(3) When and how the litigation hold was issued to the USAO responsive to the Special Master's investigation;

(4) The number of USAO employees who responded they were likely to have or might have information responsive to the litigation hold;

(5) The type and volume of information in the possession of the USAO responsive to the litigation hold; and

(6) Discussions and the decision to instruct SAUSA Tomasic to enter Chief Judge Robinson's chambers after-hours to deliver materials related to this case, as detailed at the September 7, 2016 hearing.

(7) The communications she had with AUSA Catania or on about December 27, 2017 and January 2, 2018, regarding what the interpreter assigned to *Herrera-Zamora* told AUSA Catania;

(8) The interview she conducted with the interpreter assigned to *Herrera-Zamora* on or about January 4, 2018;

(9) Whether she has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

Additionally, we would ask that AUSA Catania provide a copy of the email she sent to AUSA Metzger on or about December 27, 2017, concerning AUSA Catania's discussion with the interpreter; as well as any email sent on or about January 2, 2018, concerning that same topic.

### 3. Debra Barnett – Wichita, Kansas

Ms. Barnett is an Assistant United States Attorney for the District of Kansas. During much of this litigation, she served as the Criminal Chief for the USAO. She has personal knowledge and can testify about the following topics:

(1) The USAO policy and practice concerning the issuance of subpoenas to obtain, or that would include, attorney-client protected communications;

(2) Her knowledge concerning any subpoenas sought and issued by her office to CCA-Leavenworth to obtain video recordings made from surveillance video cameras within CCA-Leavenworth, including whether she approved them before they were served;

(3) Her knowledge concerning any subpoenas sought and issued by her office to CCA-Leavenworth to obtain recordings of phone calls made by detainees and their lawyers, and whether she approved them before they were served;

(4) The policy and practice of the USAO to use a "filter" or "taint" team to screen for protected attorney-client communication;

(5) The policy and practice of the USAO to protect attorney-client communications once the "filter" or "taint" team discovers the government obtained attorney-client communications as part of its investigation, including how the USAO ensures such communications are not distributed or produced to third-parties in discovery;

(6) The policy and practice to determine what other agencies receive grand jury materials such as video recordings or phone calls made at or by CCA-Leavenworth;

(7) What remedial action, if any, she took or had taken to ensure defense attorney-client communications were not being obtained or reviewed by her office;

(8) What remedial action, if any, she took or had taken regarding misconduct by SAUSA Tomasic, AUSA Kim Flannigan, or any other prosecutor at the USAO;

(9) Her decision to have a representative from the U.S. Marshals Service escort SAUSA Tomasic to Chief Judge Robinson's chambers after-hours to deliver materials related to this case;

(10) The content of discussions concerning the obligations of the USAO to provide notification to the Court and the defense concerning the misconduct of attorneys at the USAO and the basis for the decision reached; and

(11) The content of discussions and decision to file notice of record corrections in this case or any other case in the District subsequent to the Special Master being appointed.

(12) Whether she has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

### 4. **Kim Flannigan** – Kansas City, Kansas

Ms. Flannigan is an AUSA. She has personal knowledge and can testify about the following topics:

(1) That in 2016 her office obtained video recordings from CCA-Leavenworth that included video from attorney visitation rooms;

(2) Communications by or between herself, SAUSA Tomasic, and Jackie Rokusek in August 2016 relating to the USAO's assertions that Ms. Rokusek had a conflict with her client, Richard Dertinger, due to its accusation that Ms. Rokusek provided to him information from another case;

(3) Any and all efforts taken by USAO to corroborate the statements of "cooperators" that CCA-Leavenworth inmate Dertinger had told other inmates that Ms. Rokusek provided him discovery from another case that detailed an ongoing investigation of the smuggling of controlled substances into and within CCA-Leavenworth;

(4) The content of discussions concerning the obligations of the USAO to protect defense attorney-client communications and the basis for the decision reached;

(5) The decision and basis in April 2016 to file a show cause motion against a defense attorney in *United States v. Huff* (16-20067-09-CM);

(6) The content of discussions concerning the obligations of the USAO to provide notification to the Court and the defense concerning the conduct of attorneys at the USAO relating to CCA-Leavenworth video recordings and the basis for the decision reached;

(7) Any and all advice she gave to SAUSA Tomasic and AUSA David Zabel to use a filter team in *United States v. Herrera-Zamora* (14-20049-01-CM), including the basis, reasoning, and procedures she used to render this advice;

(8) Her expectations for what a "filter team" would do and how that would limit the access of SAUSA Tomasic and AUSA Zabel to case information that was protected attorney-client communications;

(9) When she became aware that SAUSA Tomasic purposefully and intentionally listened to the recordings of attorney-client phone calls made from CCA-Leavenworth; and

(10) The content of discussions concerning the obligations of the USAO to provide notification to the Court and the defense concerning the conduct of attorneys at the USAO relating to CCA-Leavenworth inmate phone calls with defense attorneys, and the basis for the decision reached.

(11) Whether she has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

### 5. **Tris Hunt** – Kansas City, Kansas

Mr. Hunt is an AUSA. He has personal knowledge and can testify about the following topics:

(1) When, why, and the case names wherein he was appointed to a filter team;

(2) What, if any, communications he reviewed as part of the filter team in this case or any other case since this case was first charged;

(3) The policy and procedures used by a filter team at the USAO;

(4) Communications with US Attorney Beall regarding his duty of "candor" regarding allegations that SAUSA Tomasic entered Chief Judge Robinson's chambers after-hours, as discussed at the September 7, 2016 hearing;

(5) The placement of a manila folder in the "inbox" in SAUSA Tomasic's office in October 2016 alleged by SAUSA Tomasic to have contained recordings of attorney-client telephone calls made from CCA-Leavenworth;

(6) His awareness of any interpreter involved in the translation of phone calls that included attorney-client communications and, if so, who, when, and what case;

(7) The contents and discussion during the meeting on February 21, 2017 with members of the USAO to discuss a response to a defense motions alleging the USAO had obtained recordings of protected attorney-client communications in *United States v. Herrera-Zamora* (14-20049-01-CM); and

(8) His actions on or about August 5, 2016 to secure the protected attorney-client communications obtained in this case that were in the possession of the USAO.

(9) Whether he has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.


**6. Christopher Oakley** – Kansas City, Kansas

Mr. Oakley is an AUSA. He has personal knowledge and can testify about the following topics:

(1) That in 2016 his office obtained video recordings from CCA-Leavenworth as that included video from attorney visitation rooms;

(2) His participation in the law enforcement "raid" at CCA-Leavenworth in April 2016, including his knowledge of the audio/video surveillance system at the facility;

(3) The planned undercover operation in Spring 2016 wherein he, SAUSA Tomasic, and law enforcement agents sought approval to use a confidential human source and/or informant to pose as a defense paralegal and visit inmate(s) within CCA-Leavenworth attorney visitation room(s) to record communications and conduct related to an investigation into drug smuggling into and within CCA-Leavenworth;

(4) The content of discussions concerning the obligations of the USAO to protect defense attorney-client communications and the basis for the decision reached; and

(5) The content of discussions concerning the obligations of the USAO to provide notification to the Court and the defense concerning the conduct of attorneys at the

USAO relating to CCA-Leavenworth video recordings and the basis for the decision reached.

(6) His awareness of Jeff Stokes's review of the CCA video, including any restrictions that were placed on that review;

(7) His awareness of SAUSA Tomasic and AUSA Flannigan's decision to allow Ms. Rokusek to view the video;

(8) When he became aware that the CCA video contained depictions of attorney-client meetings, how he became aware of it, and what steps he took after gaining that knowledge.

(9) Whether he has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

### 7. **Scott Rask** – Kansas City, Kansas

Mr. Rask is an AUSA. He has personal knowledge and can testify about the following topics:

(1) His conduct and circumstances in August 2016 to secure hard drives/DVRs obtained by the USAO from CCA-Leavenworth that included video recordings from surveillance video cameras;

(2) Whether he has access or authority to access the USAO vault at Kansas City;

(3) His awareness and actions concerning his knowledge that in January 2017 an interpreter used by the USAO recognized a family voice in attorney-client calls made from CCA-Leavenworth and notified attorneys in the office;

(4) His awareness that prosecutors in his office obtained attorney-client phone calls made from CCA-Leavenworth and what, if any, action he took to investigate whether these calls were listened to or reviewed by any member of his office;

(5) His meeting with SAUSA Tomasic and AUSA Zabel on May 10, 2017 wherein he learned that SAUSA Tomasic had listened to protected attorney-client communications in *United States v. Herrera-Zamora* (14-20049-01-CM); and

(6) Any and all meetings, discussions, and communications following the May 10, 2017 meeting with SAUSA Tomasic in which he and the USAO analyzed what

remedial actions, if any, were necessary, to include correcting the record of statements made by SAUSA Tomasic in this case and/or any other cases.

(7) The interview he and AUSA Metzger conducted with the interpreter in *Herrera-Zamora* on or about January 4, 2018.

(8) The results of the office's investigation into SAUSA Tomasic's conduct in *Herrera-Zamora* and *Huff*.

(9) Whether he has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.


8. **Erin Tomasic**[1] – Formerly Kansas City, Kansas

Ms. Tomasic is a former employee of the USAO as an appointed SAUSA. She has personal knowledge and can testify about the following topics:

(1) Her duties as the lead prosecuting attorney for this case;

(2) Her duties as the lead prosecuting attorney in *United States v. Herrera-Zamora* (14-20049-01-CM), along with AUSA Zabel;

(3) The reason and purpose for the USAO to issue subpoenas to CCA-Leavenworth to obtain video recordings taken from surveillance cameras and audio recordings of telephone calls by and between inmates at CCA-Leavenworth;

(4) The planned undercover operation in Spring 2016 wherein she, AUSA Oakley, and law enforcement agents sought approval to use a confidential human source and/or informant to pose as a defense paralegal and visit inmate(s) within CCA-Leavenworth attorney visitation room(s) to record communications and conduct related to an investigation into drug smuggling into and within CCA-Leavenworth;

---

[1] The FPD does not concede that *Touhy* regulations apply to a former USAO employee. We include Ms. Tomasic within this request prophylactically should the government take the position that her testimony, which will cover topics and conduct during the time Ms. Tomasic was an employee and/or in furtherance of the performance of her duties as a SAUSA at the USAO, remains subject to *Touhy* regulations and requirements.

(5) Her presence and purpose at CCA-Leavenworth during the law enforcement "raid" in April 2016, to include her knowledge of the video surveillance and security system utilized by CCA;

(6) Who drafted and reviewed the subpoenas to CCA-Leavenworth before they were sought, filed, and/or served and why the language did not specifically exclude attorney-client phone calls or meetings;

(7) The advice she sought about whether to use a filter team in this case or any case;

(8) Her knowledge and expectations for what a "filter team" would do;

(9) Her policy and practice in disseminating inmate phone calls in discovery;

(10) Communications by or between herself, AUSA Flannigan, and Jackie Rokusek in August 2016 relating to the USAO's assertion that Ms. Rokusek had a conflict with her client, Richard Dertinger, due to its accusation that Ms. Rokusek provided him information from another case;

(11) Any and all efforts taken by USAO to corroborate the statements of "cooperators" that CCA-Leavenworth inmate Dertinger had told other inmates that Ms. Rokusek provided him discovery from another case that detailed an ongoing investigation of the smuggling of controlled substances into and within CCA-Leavenworth;

(12) The content of discussions concerning the obligations of the USAO to protect defense attorney-client communications and the basis for the decision reached;

(13) Whether she had access to the USAO vault in Kansas City and what actions she took to physically secure any items, materials, or information that included protected attorney-client communications;

(14) The decision and basis in April 2016 to file a show cause motion against a defense attorney in *United States v. Huff* (16-20067-09-CM);

(15) Her conduct and circumstances in entering Chief Judge Robinson's chambers to deliver materials related to this case, as discussed in the September 7, 2016 hearing;

(16) When, where, how, why, and in what case she listened to recordings of attorney-client phone calls;

(17) When, where, and why she disclosed her conduct in listening to attorney-client communications to persons in her office;

(18) The contents and discussion during the meeting on February 21, 2017 with members of the USAO to discuss a response to a defense motions alleging the USAO had obtained and listened to recordings of protected attorney-client communications;

(19) Her conversation with defense attorneys in February 2017 wherein she and AUSA Zabel demanded the defense withdraw the motions, including her basis for their request;

(20) Any and all meetings, discussions, and communications in which she and the USAO analyzed what remedial actions, if any, were necessary; and

(21) The basis for and circumstances surrounding her termination from the USAO, to include any and all remedial actions taken by her subsequent to her termination.

(22) Any conversations she may have had with, including instructions she or others gave, to the interpreter assigned to listen to inmate calls in *Herrera-Zamora*, and the circumstances under which the interpreter relayed any results of that interpretation.

(23) Whether she has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.


### 9. **Lanny Welch** – Wichita, Kansas

Mr. Welch is an AUSA. He has personal knowledge and can testify about the following topics:

(1) He served as the USAO's Professional Responsibility Officer in 2016;

(2) He was contacted by SAUSA Tomasic in 2016 about what to do about recordings obtained by the USAO of attorney-client telephone calls made from CCA-Leavenworth;

(3) The advice he gave to SAUSA Tomasic to use a filter team, including the basis, reasoning, and procedures he used to render this advice;

(4) His expectations for what a "filter team" would do and how that would limit the access of prosecutors to case information that was protected attorney-client communications;

(5) Whether the conduct of SUASA Tomasic and others was consistent with the advice he provided; and

(6) Whether any remedial actions were taken within the USAO based upon the conduct of SAUSA Tomasic and others relating to this case.

**10. David Zabel** – Kansas City, Kansas

Mr. Zabel is an AUSA. He has personal knowledge and can testify about the following topics:

(1) He was the prosecuting attorney for *United States v. Herrera-Zamora* (14-20049-01-CM) along with SAUSA Tomasic;

(2) The reason and purpose for the USAO to obtain recordings of attorney-client telephone calls made from CCA-Leavenworth;

(3) How the recordings of attorney-client phone calls made from CCA-Leavenworth were obtained;

(4) Whether he reviewed any subpoenas before they were sought, drafted, or issued to determine whether any efforts were made to ensure they did not return recordings of attorney-client protected communication;

(5) The advice he gave to SAUSA Tomasic to use a filter team, including the basis, reasoning, and procedures he used to render this advice;

(6) His expectations for what a "filter team" would do and how that would limit the access of prosecutors to case information that was protected attorney-client communications;

(7) His conversations with defense lawyers in February 2017 regarding whether the prosecution team had listened to any calls between attorneys and their clients, and the basis for his assurance to defense lawyers that they had not;

(8) His discussions with SAUSA Tomasic following his conversation with defense lawyers to confirm or deny whether she had listened to any calls;

(9) The contents and discussion during the meeting on February 21, 2017 with members of the USAO to discuss a response to a defense motions alleging the USAO had obtained recordings of protected attorney-client communications;

(10) His conversation with defense lawyers on February 22, 2017 wherein he demanded the defense withdraw the motions, including his basis for the request;

(11) His meeting with SAUSA Tomasic and AUSA Rask on May 10, 2017 wherein he learned that SAUSA Tomasic had listened to protected attorney-client communications;

(12) Any and all meetings, discussions, and communications following the May 10, 2017 meeting with SAUSA Tomasic in which he and the USAO analyzed what remedial actions, if any, were necessary;

(13) The decision to file the Notice of Record Correction on June 19, 2017, including the explanation for the delay between the revelation by SAUSA Tomasc on May 10 and this filing; and

(14) His written advice to US Attorney Beall regarding his "candor" obligations to correct the record regarding allegations that SAUSA Tomasic entered Chief Judge Robinson's chambers after-hours to deliver materials related to this case, as discussed at the September 7, 2016 hearing.

(15) Any discussion he personally participated in or subsequently became aware of regarding the instructions given to the interpreter assigned to listen to inmate calls *Herrera-Zamora*.

(16) Whether he has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

## 11.    **Pauletta Boyd** – Kansas City, Kansas

Ms. Boyd is a Litigation Support Specialist. She has personal knowledge and can testify to the following:

(1) The receipt of copies from the U.S. Secret Service of hard drives/DVRs obtained from CCA-Leavenworth in June 2016;

(2) The hardware and software needed to view content from the hard drives/DVRs obtained by the USAO from CCA-Leavenworth;

(3) The creation or receipt of an index of the video recordings from CCA-Leavenworth;

(4) How the hard drives/DVRs were secured at the USAO prior to August 5, 2016;

(5) Who, when, how, and why the hard drives/DVRs were viewed;

(6) How the hard drives/DVRs were secured at the USAO subsequent to August 5, 2016;

(7) Who had access to her office when she was not there; and

(8) The computer "refresh" that occurred at the USAO and the "wiping" of the stand-alone computer that included the software to view the recordings on the hard drive/DVRs.

## 12.    **Dave Steeby** – Kansas City, Kansas

Mr. Steeby is a Systems Manager. He has personal knowledge and can testify to the following:

(1) The computer "refresh" that occurred at the USAO and the "wiping" of the stand-alone computer that included the software to view the recordings on the hard drive/DVRs;

(2) How a hard drive is "wiped" clean at the USAO and whether forensic software can recover any relevant data;

(3) Any and all IT efforts to preserve electronic data once the litigation hold was issued regarding this case;

(4) The process to search and organize relevant electronic information related to this case as it has been preserved at the USAO due to the litigation hold;

(5) Instructions he received to cooperate with the Special Master, and from whom; and

(6) His knowledge whether any other information subject to the litigation hold was not preserved.

12.    **Sheri Catania** – Kansas City, Kansas

Ms. Catania is an AUSA. She has personal knowledge about, and can testify to, the following topics:

(1) Her knowledge that CCA often records attorney-client phone calls;

(2) Her knowledge about the office's policy, or lack thereof, governing requests to CCA for inmates' recorded telephone calls;

(3) Her knowledge about SAUSA Tomasic's decision to listen to recorded attorney-client telephone calls;

(4) Her knowledge about SAUSA Tomasic's decision to obtain video from CCA depicting meetings between attorneys and clients;

(5) Her knowledge about SAUSA Tomasic's decision to view, or have others view, the CCA video depicting meetings between attorneys and clients;

(6)  Her knowledge about whether other members of the office knew of SAUSA Tomasic's decision to listen to attorney-client telephone calls at the time SAUSA Tomasic listened to the calls or shortly thereafter;

(7) The discussion with an interpreter, on or about December 27, 2017, regarding SAUSA Tomasic's instructions to the interpreter about listening to recorded inmate calls;

(8) The communication she had with AUSA Metzger, on or about December 27, 2017, regarding AUSA Catania's discussion with the interpreter;

(9) The communication she had with AUSA Metzger, on or about January 2, 2018, regarding AUSA Catania's discussion with the interpreter;

(10)    Whether she has an opinion on, or knows the reputation of, any other member of the office who has testified or given information to the court in this case regarding their character for honesty.

Additionally, we would ask that AUSA Catania provide a copy of the email she sent to AUSA Metzger on or about December 27, 2017, concerning AUSA Catania's discussion with the interpreter; as well as any email sent on or about January 2, 2018, concerning that same topic.

**Conclusion**

This information meets all the criteria for disclosures under 28 C.F.R. § 16.26(a). It is appropriate under the rules of procedure governing this case – the Federal Rules of Criminal Procedure – as the testimony and documents are material to preparing a defense under Rule 16(a)(1)(E). There is not any statutory privilege that applies.

None of the criteria for non-disclosure delineated under § 16.26(b) applies here. The disclosure would not violate a statute or specific regulation. The information sought is not classified, nor would it reveal any confidential source. Finally, the records sought are not law-enforcement records or trade secrets.

We request that all witnesses appear in person to provide testimony. A motion for subpoenas is being filed contemporaneously with the issuance of this letter. We ask that all witnesses gather any documents that would assist them in providing their testimony and provide those prior to the date of hearing. This specifically includes any statements, of any kind, made these witnesses about these matters.

Finally, please let me know if you would be willing to accept service of the subpoenas for these employees, or if you would prefer I serve them each personally.

Sincerely,

*s/ Melody Brannon*

Melody Brannon
Federal Public Defender

Cc:
David Cohen
Special Master
david@specialmaster.biz

Kirk Redmond
First Assistant Federal Public Defender
Kirk_Redmond@fd.org

Stephen McAllister
U.S. Attorney
Stephen.Mcallister@usdoj.gov

Branden Bell
Assistant Federal Public Defender
Branden_Bell@fd.org

Tom Beall
First Assistant U.S. Attorney
Thomas.Beall@usdoj.gov

Rich Federico
Staff Attorney (R&W)
Rich_Federico@fd.org

Emily Metzger
Assistant U.S. Attorney
Emily.Metzger@usdoj.gov

Debra Barnett
Assistant U.S. Attorney
Debra.Barnett@usdoj.gov

Exhibit B2

# Kansas Federal Public Defender

**www.ks.fd.org**



Federal Public Defender Melody Brannon
First Assistant Federal Public Defender Kirk Redmond

Topeka Division Attorneys
Branden A. Bell
Rich Federico
Carl Folsom
David Magariel
Andrew McGowan
Paige A. Nichols

April 30, 2018

<u>*Delivered via email*</u>
Mr. Steven Clymer
Assistant U.S. Attorney
Northern District of New York
steven.d.clymer@usdoj.gov

    Re:    *Touhy* request for *United States v. Lorenzo Black, et. al.*,
          16-cr-20032-JAR (D. Kan.)

Dear Mr. Clymer:

    This letter serves as a *Touhy* request, pursuant to 28 C.F.R. §§ 16.21(a) and (b), requesting persons listed herein, employed or formerly employed by the United States Marshals Service (USMS), to appear and testify at the evidentiary hearing on May 15, 2018, or as required thereafter until completion of their testimony.

    As you know, the Court set the hearing to discuss the Special Master's findings concerning the government's failure to comply with the Phase III investigation and other matters raised concerning the Phase III investigation. The Phase III investigation was ordered specifically to investigate the conduct of the government. It is in this context that the witness is requested to appear and testify.

    Each person listed herein is an "employee" or former employee of the Department of Justice, and the USMS in particular, as defined under 28 C.F.R. § 16.21(b) and USAM § 1-611. As the Department of Justice attorney in charge of this case, the request is submitted to you under 28 C.F.R. § 16.23(a). A summary of the testimony sought from each witness is also provided, as required under 28 C.F.R. § 16.23(c), as follows:

Kansas City Division
500 State Ave, Room 201
Kansas City, Kansas 66101
Tel 913.551.6712
Fax 913.551.6562

Topeka Division
117 SW 6th Ave, Ste 200
Topeka, Kansas 66603
Tel 785.232.9828
Fax 785.232.9886

Wichita Division
301 N Main, Ste 850
Wichita, Kansas 67202
Tel 316.269.6445
Fax 316.269.6175

**1. Patricia Cook** – Kansas City, Kansas

Ms. Cook is a Contract Oversight Specialist for the USMS. She has personal knowledge and can testify about the following topics:

(1) To authenticate and testify about the contractual provisions between the USMS and CCA-Leavenworth concerning the monitoring, recording, and producing of communications between inmates and their attorneys;

(2) The policy and procedures utilized by the USMS to request inmate information from CCA-Leavenworth in 2016;

(3) Her knowledge of times wherein an Assistant U.S. Attorney, or agents on his or her behalf, made a direct request for recordings of inmate phone calls or other inmate information; and

(4) Authentication of communications between herself, CCA-Leavenworth employees, and the USAO regarding inmate information requested as part of this and other investigations.

**Conclusion**

This information meets all the criteria for disclosures under 28 C.F.R. § 16.26(a). It is appropriate under the rules of procedure governing this case – the Federal Rules of Criminal Procedure – as the testimony and documents are material to preparing a defense under Rule 16(a)(1)(E). There is not any statutory privilege that applies.

None of the criteria for non-disclosure delineated under § 16.26(b) applies here. The disclosure would not violate a statute or specific regulation. The information sought is not classified, nor would it reveal any confidential source. Finally, the records sought are not law-enforcement records or trade secrets.

We request that Ms. Cook appear in person to provide testimony. A motion for subpoenas is being filed contemporaneously with the issuance of this letter.

Sincerely,

*s/ Melody Brannon*
Melody Brannon
Federal Public Defender

Cc:

David Cohen
Special Master
david@specialmaster.biz

Kirk Redmond
First Assistant Federal Public Defender
Kirk_Redmond@fd.org

Tom Beall
U.S. Attorney
Thomas.Beall@usdoj.gov

Branden Bell
Assistant Federal Public Defender
Branden_Bell@fd.org

Debra Barnett
Assistant U.S. Attorney
Debra.Barnett@usdoj.gov

Rich Federico
Staff Attorney (R&W)
Rich_Federico@fd.org

Emily Metzger
First Assistant U.S. Attorney
Emily.Metzger@usdoj.gov

Stephen McAllister
U.S. Attorney
Stephen.Mcallister@usdoj.gov

Exhibit C1



**United States Department of Justice**

*United States Attorney*
*Northern District of New York*

---

100 South Clinton Street, P.O. Box 7198        Tel.: (315) 448-0672
James M. Hanley Federal Building                     Fax: (315) 448-0658
Syracuse, New York 13261-7198

May 10, 2018

**By Electronic Mail Only**

David R. Cohen
Federal Special Master
24400 Chagrin Boulevard
Reflections Bldg., Suite 300
Cleveland, Ohio  44122
david@specialmaster.law

     Re:     *Touhy* Requests for *United States v. Black, et al.*, No. 16-CR-20032-JAR

Dear Mr. Cohen:

     According to an order of production issued by the district court on April 26, 2018 [docket #438], you either have or intend to subpoena 21 witnesses for a hearing set for May 15-16, 2018, before Chief Judge Robinson, including a number of present and former employees of the Department of Justice ["DOJ"].  Further, in connection with testimonial subpoenas that you had served in December 2017 on some of these DOJ employees, specifically First Assistant United States Attorney ["FAUSA"] Thomas Beall, Assistant United States Attorney ["AUSA"] Emily Metzger, AUSA Debra Barnett, AUSA Kim Flannigan, Systems Manager David Steeby, Litigation Support Specialist Pauletta Boyd; and former Special AUSA ["SAUSA"] Erin Tomasic, you attached what were described as "summary statement[s] per 16.23(c)."  I assume that these so-called "*Touhy* notices" summarize the testimony that you seek to elicit from these witnesses at the upcoming hearing. I have not received from you similar *Touhy* notices with respect to the other DOJ employees whom you now either have or apparently intend to subpoena for the upcoming hearing.

     Be advised that the DOJ employees are not authorized to disclose any of the information described in your *Touhy* notices except as set out below.  Further, the DOJ employees are not authorized to disclose any information that is not described in your notices.  In other words, the named employees are authorized to make only those disclosures set out below.

     Note that the below-described authorization does not prevent the government from raising evidentiary objections at the hearing or in future proceedings to any of the described disclosures. The government retains its right to make any such objections.

David Cohen
*U.S. v. Black*, No. 16-CR-20032-JAR
May 10, 2018
Page 2

AUSA Flannigan is authorized to disclose information concerning "the meeting [that] she and Tomasic had with Jacquelyn Rokusek." As you know, Ms. Flannigan testified about this matter in a hearing in *United States v. Dertinger*, and was subject to examination by you at that hearing.

Former SAUSA Tomasic is authorized to disclose "the circumstances of her unpermitted, after-hours entrance into the chambers of the trial judge," except that she is not authorized to disclose internal USAO communications, whether oral or written, concerning that incident, whether occurring before or after the incident.

Litigation Support Specialist Pauletta Boyd is authorized to disclose "the categoric content of, and storage provisions for, audio and video recordings produced by CCA"; to describe "the system she used to ensure an acceptable chain of custody for materials in each box of recordings, including any log of individuals permitted to view video recordings connected with the *Black* case"; to describe "her knowledge of those who viewed the contents of boxes marked with notice that they might contain attorney-client material, and under what circumstances," "what she knows about any log of those who listened to audio records provided by CCA," and "what she knows about the circumstances under which the computer she used to view CCA's video recordings was the only one that was not preserved and had its hard drive wiped clean." With respect to these matters, note that: (a) your summary assumes facts that are not accurate; and (b) as you know, Ms. Boyd testified about these matters in a hearing in *United States v. Dertinger*, and was subject to examination by you at that hearing.

Systems Manager David Steeby is authorized to disclose "the USAO's failure to preserve and decision to wipe clean the hard drive of the computer designated for viewing the video recordings produced by CCA." With respect to these matters, note that: (a) your summary assumes facts that are not accurate; and (b) as you know, the United States Attorney's Office provided you with a memorandum accurately describing the relevant facts. Similarly, AUSA Metzger is authorized to disclose "what she knows about the circumstances surrounding the USAO's failure to preserve a computer containing information received in the *Black* case and wiping its hard drive clean, not including any internal USAO communications."

FAUSA Beall and AUSA Barnett are not authorized to make any of the disclosures set out in your *Touhy* summaries. I note that your summary concerning AUSA Barnett contains an unproven assertion, namely that former SAUSA "Tomasic had obtained and reviewed *privileged*

**David Cohen**
***U.S. v. Black*, No. 16-CR-20032-JAR**
**May 10, 2018**
**Page 3**

communications from CCA." (Emphasis added). There is no evidence or judicial finding of this fact and, indeed, your investigation disproves it.

Very truly yours,

Steven D. Clymer
Assistant United States Attorney
Special Attorney

Exhibit C2



**United States Department of Justice**

*United States Attorney*
*Northern District of New York*

---

100 South Clinton Street, P.O. Box 7198        Tel.: (315) 448-0672
James M. Hanley Federal Building               Fax: (315) 448-0658
Syracuse, New York 13261-7198

May 10, 2018

**By Electronic Mail Only**

Melody Brannon
Federal Public Defender
District of Kansas
500 State Avenue, Room 201
Kansas City, Kansas

     Re:    *Touhy* Requests for *United States v. Black, et al.*, No. 16-CR-20032-JAR

Dear Ms. Brannon:

      I am writing in response to your two letters to me dated April 30, 2018, concerning your desire to elicit designated testimony from certain present and former Department of Justice employees at a hearing scheduled for May 15-16, 2018, before Chief Judge Robinson. Be advised that the named employees are not authorized to disclose any of the information described in your letters except as set out below. Further, the named employees are not authorized to disclose any information that is not described in your letters. In other words, the named employees are authorized to make only those disclosures set out below.

      Note that the below-described authorization does not prevent the government from raising evidentiary objections at the hearing or in future proceedings to any of the described disclosures. The government retains its right to make any such objections.

      The named employees are authorized to disclose the following information in the event that there is a proper and focused question seeking such disclosure (and assuming that an objection is not sustained):

1. <u>First Assistant United States Attorney Thomas Beall</u>:

    a.  The total number and names of cases known to Mr. Beall in which the USAO notified the court in a publicly-filed record correction of an incorrect statement or representation of USAO prosecutors relating to the USAO obtaining, possession, using, disseminating, listening, or viewing protected attorney-client communications.

Melody Brannon
*U.S. v. Black*, No. 16-CR-20032-JAR
May 10, 2018
Page 2

2. <u>Assistant United States Attorney Emily Metzger:</u>[1]

   a. When and how the litigation hold in *United States v. Black* was issued to the USAO responsive to the Special Master's investigation. This authorization does not include disclosure of the USAO's internal response to the litigation hold.

   b. The type and volume of information in the possession of the USAO responsive to the litigation hold. This authorization does not include disclosure of the content of the information in the possession of the USAO responsive to the litigation hold.

3. <u>Assistant United States Attorney Kim Flannigan:</u>

   a. The fact that, in 2016, her office obtained video recordings from CCA-Leavenworth that included video from attorney visitation rooms.

   b. Communications by or between herself, SAUSA Tomasic, and Jackie Rokusek in August 2016 relating to the USAO's assertions that Ms. Rokusek had a conflict with her client, Richard Dertinger, due to its accusation that Ms. Rokusek provided to him information from another case. With respect to this request by you: (a) AUSA Flannigan is authorized to testify about these matters to the extent that she did so in a hearing on June 21, 2016, in *United States v. Dertinger*; and (b) the government is willing to stipulate that the testimony from the *Dertinger* hearing transcript from June 20 and 21, 2016, be made part of the record in *United States v. Black*.

4. <u>Assistant United States Attorney Christopher Oakley:</u>

   a. The fact that, in 2016, his office obtained video recordings from CCA-Leavenworth as that included video from attorney visitation rooms.

5. <u>Former Special Assistant United States Attorney Erin Tomasic:</u>

   a. Her duties as the lead prosecuting attorney in *United States v. Black*.

   b. Her duties as the lead prosecuting attorney in *United States v. Herrera-Zamora* (14-20049-01-CM), along with AUSA Zabel.

   c. Her policy and practice in disseminating inmate phone calls in discovery.

---

[1] Your letter seeks information from Ms. Metzger and Assistant United States Attorney Scott Rask concerning "[t]he interview [that they] conducted with the interpreter assigned to Herrera-Zamora on or about January 4, 2018." As you know, one of your assistants since has interviewed the interpreter.

     d.   Communications by or between herself, AUSA Flannigan, and Jackie Rokusek in August 2016 relating to the USAO's assertion that Ms. Rokusek had a conflict with her client, Richard Dertinger, due to its accusation that Ms. Rokusek provided him information from another case.  Former SAUSA Tomasic's authorization is limited to conversations that she had when attorney Rokusek was involved, not to internal conversations with AUSA Flannigan or other USAO employees.

     e.   Her conduct and circumstances in entering Chief Judge Robinson's chambers to deliver materials related to this case, as discussed in the September 7, 2016 hearing. This authorization does not extend to discussions about this event within the USAO, whether such discussions occurred before or after the entry.

     f.   When, where, how, why, and in what case(s) she listened to recordings of attorney-client phone calls.

     g.   Her conversation with defense attorneys in February 2017 wherein she and AUSA Zabel demanded the defense withdraw the motions, including her basis for their request.  This authorization does not extend to discussions with USAO employees when defense counsel was not involved.

     h.   The basis for and circumstances surrounding the termination of her association with the USAO.[2]

     i.   Any conversations she may have had with, including instructions she or others gave, to the interpreter assigned to listen to inmate calls in *Herrera-Zamora*, and the circumstances under which the interpreter relayed any results of that interpretation.  This authorization is limited to communications with the interpreter, not internal USAO communications.

6.  <u>Assistant United States Attorney Lanny Welch</u>:

     a.   The fact that he served as the USAO's Professional Responsibility Officer in 2016.

7.  <u>Assistant United States Attorney David Zabel</u>:

     a.   The fact that he was the prosecuting attorney for *United States v. Herrera-Zamora* (14-20049-01-CM) along with SAUSA Tomasic.

---

[2] Your further request for information concerning "any and all remedial actions taken by [Ms. Tomasic] subsequent to her termination" is not governed by the *Touhy* regulations.

Melody Brannon
*U.S. v. Black*, No. 16-CR-20032-JAR
May 10, 2018
Page 4

    b.   How the recordings of attorney-client phone calls made from CCA-Leavenworth were obtained.

    c.   His conversations with defense lawyers in February 2017 regarding whether the prosecution team had listened to any calls between attorneys and their clients.  Mr. Zabel is not authorized to disclose the basis for his assurance to defense lawyers.

    a.   His conversation with defense lawyers on February 22, 2017 wherein he demanded the defense withdraw the motions.  Mr. Zabel is not authorized to disclose the basis for the request.

8.   <u>Litigation Support Specialist Pauletta Boyd</u>:

    a.   The receipt of copies from the U.S. Secret Service of hard drives/DVRs obtained from CCA-Leavenworth in June 2016; the hardware and software needed to view content from the hard drives/DVRs obtained by the USAO from CCA-Leavenworth; the creation or receipt of an index of the video recordings from CCA-Leavenworth; how the hard drives/DVRs were secured at the USAO prior to August 5, 2016; who, when, how, and why the hard drives/DVRs were viewed; how the hard drives/DVRs were secured at the USAO subsequent to August 5, 2016; who had access to her office when she was not there.  With respect to this request by you: (a) Ms. Boyd is authorized to testify about these matters to the extent that she did so in a hearing on June 20, 2016, in *United States v. Dertinger*; and (b) the government is willing to stipulate that the testimony from the *Dertinger* hearing transcript from June 20 and 21, 2016, be made part of the record in *United States v. Black*.

    b.   The computer "refresh" that occurred at the USAO and the "wiping" of the stand-alone computer that included the software to view the recordings on the hard drive/DVRs.  A memorandum discussing this topic was publicly-filed in *In re United States*, Tenth Circuit Case No. 18-3007.  A copy was served on you.

9.   <u>Systems Manager David Steeby</u>:

    a.   The computer "refresh" that occurred at the USAO and the "wiping" of the stand-alone computer that included the software to view the recordings on the hard drive/DVRs.  A memorandum discussing this topic was publicly filed in *In re United States*, Tenth Circuit Case No. 18-3007.  A copy was served on you.

    b.   How a hard drive is "wiped" clean at the USAO and whether forensic software can recover any relevant data.

    c.   Any and all IT efforts to preserve electronic data once the litigation hold was issued regarding this case, but not any internal communications regarding his efforts.

    d. His knowledge whether any information subject to the litigation hold was not preserved.

10. <u>Assistant United States Attorney Sheri Catania</u>:

    a. Her knowledge that CCA often records attorney-client phone calls.

11. <u>Former United States Marshal's Service Employee Patricia Cook</u>:

    a. Her formal education and her duties as a Contract Oversight Specialist on the CCA-Leavenworth contract;

    b. To the extent of her knowledge, the authenticity of any contractual provisions contained in the CCA-Leavenworth contract regarding monitoring, recording, and producing communications between inmates and their attorneys. Ms. Cook is not authorized to interpret any such provisions;

    c. To the extent of her knowledge and recollection, any policies or procedures utilized by the USMS to request inmate information from CCA-Leavenworth in 2016;

    d. To the extent of her knowledge and recollection, any instance on which an AUSA, or an agent acting on an AUSA's behalf, made a direct request for recordings of inmate telephone calls or other inmate information;

    e. Whether any purported communication between herself, one or more CCA-Leavenworth employees, and the USAO regarding inmate information requested as part of this or another investigation is authentic.

Please note that Ms. Cook is not authorized to disclose any privileged information, including, but not limited to, the following: Classified and classifiable information; information that would reveal the internal deliberative process within the United States Department of Justice, including the Marshals Service, or any other federal departments or agencies; information that would reveal a confidential source or informant; information the disclosure of which would violate a statute; information that would reveal trade secrets; information that could threaten the lives or safety of any individual, including home addresses of law enforcement personnel; information that could interfere with ongoing investigations and/or prosecutions; information that could reveal investigative or intelligence gathering and dissemination techniques whose effectiveness would be thereby impaired; privileged attorney-client information; information that would reveal attorney work product or matters of prosecutorial discretion; and expert opinion testimony related to facts or information acquired as part of the performance of her official duties.

**Melody Brannon**
***U.S. v. Black***, No. 16-CR-20032-JAR
**May 10, 2018**
**Page 6**


Assistant United States Attorneys Debra Barnett, Tris Hunt, and Scott Rask are not authorized to make any of the disclosures set out in your letter regarding the USAO employees.


Very truly yours,

Steven D. Clymer
Assistant United States Attorney
Special Attorney for the United States